**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 31025**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2006 Opinion No. 55** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: August 11, 2006** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| DARREN B. HOOPER, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Stephen W. Drescher, District Judge.

Judgment of conviction for lewd conduct with a minor child under sixteen, vacated, and case remanded.

Molly J. Huskey, State Appellate Public Defender; Paula M. Swensen, Deputy Appellate Public Defender, Boise, for appellant. Paula M. Swensen argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

_____

LANSING, Judge

Darren B. Hooper appeals his conviction for lewd conduct with a minor. His primary argument is that the Confrontation Clause was violated when the district court admitted a videotaped interview of the child victim after the court found that the child was unable to testify at trial. Applying the United States Supreme Court's analysis in recent decisions interpreting the Confrontation Clause, we hold that admission of the videotape was error, and we therefore vacate the conviction and remand for further proceedings.

**I.**

**FACTUAL & PROCEDURAL BACKGROUND**

Hooper was convicted of lewd conduct with a minor under the age of sixteen, Idaho Code § 18-1508, for anal/genital contact with his daughter, six-year-old A.H. Shortly after the alleged molestation, A.H. told her mother of it, and her mother called the police. A responding officer

1

conducted an initial investigation and arranged for A.H. and her mother to go to a Sexual Trauma Abuse Response (STAR) Center for an examination and further interview.

At the STAR Center, a doctor conducted a physical examination, which yielded some physical evidence. A nurse then conducted an interview with A.H., which was videotaped, while a police officer watched from another room. During that interview, A.H. described the details of the alleged molestation. At trial, the State attempted to call A.H. as a witness, but she was too frightened to take the oath or testify. Over Hooper's objection, the trial court admitted the videotaped interview in lieu of her live testimony.

## II.

## ANALYSIS

### A. The Confrontation Clause

Hooper asserts that admission of the videotape of A.H.'s STAR Center interview violated his right to confront adverse witnesses under the Sixth Amendment's Confrontation Clause.[1] This is a question of law over which we exercise free review. *Doe v. State*, 133 Idaho 811, 813, 992 P.2d 1211, 1213 (Ct. App. 1999); *State v. Guerrero*, 130 Idaho 311, 312, 940 P.2d 419, 420 (Ct. App. 1997).

The United States Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36 (2004) marked a significant shift in Confrontation Clause jurisprudence.[2] It held that the Confrontation Clause precludes admission at trial of a witness's out-of-court "testimonial" statements unless the accused had an opportunity to cross-examine the witness when the statement was made and the witness is unavailable to testify at trial. *Id.* at 53-54. Before *Crawford*, the Clause had been interpreted to allow admission of an unavailable witness's out-of-

---

[1] Hooper has argued on appeal that his right of confrontation was also violated by the introduction of a police officer's testimony about A.H.'s affirmative nod in response to a question about the alleged molestation. Because there was no objection to this testimony at trial, however, the issue was not preserved for appeal and we therefore do not address it.

[2] The *Crawford* decision was issued a month after Hooper's trial. Nevertheless, we must apply the *Crawford* decision on this appeal because when the United States Supreme Court applies a rule of federal law to the parties before it, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993). *See also State v. Odiaga*, 125 Idaho 384, 387-88, 871 P.2d 801, 804-05 (1994).

2

court statement if it was accompanied by adequate indicia of reliability--that is, if it fell within a firmly rooted hearsay exception or possessed other particularized guarantees of trustworthiness. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). The *Crawford* Court rejected the *Roberts* analysis as incompatible with the framers' vision and intent. *Crawford*, 541 U.S. at 59-68. After tracing the historical underpinnings of the right to confrontation, the Court said:

> Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.* at 61.

Since *Crawford*, the threshold question in Confrontation Clause analysis is whether the out-of-court statement was "testimonial." *Crawford* tells us that testimonial hearsay encompasses more than just prior in-court testimony. The Court did not offer a comprehensive definition of testimonial hearsay, but held that statements made in response to police interrogations "qualify under any definition." *Id.* at 52.

Very recently, in *Davis v. Washington*, ___ U.S. ___, 126 S. Ct. 2266 (2006), and a companion case, *Hammon v. Indiana*, which was consolidated with *Davis*, the Supreme Court built upon the *Crawford* analysis and addressed more precisely the type of police interrogations that produce "testimonial" hearsay.[3] The Court held in *Davis* that a domestic violence victim's

---

[3]     *Davis* also answered a question that *Crawford* left open--whether the Confrontation Clause still bars nontestimonial statements if they do not satisfy the "indicia of reliability" test of *Roberts*, 448 U.S. at 66. *See Crawford*, 541 U.S. at 61. Out of caution, in *State v. Doe*, 140 Idaho 873, 103 P.3d 967 (Ct. App. 2004), we assumed that nontestimonial statements still implicated the Confrontation Clause, and we applied the *Roberts* standard to statements that were clearly not testimonial. The *Doe* assumption is no longer appropriate, however, for in *Davis*, the Supreme Court has held that *only* testimonial hearsay is subject to the Confrontation Clause, stating, "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, ___ U.S. at ___, 126 S. Ct. at 2273. The Court also stated, "'The text of the Confrontation Clause reflects this focus [on testimonial hearsay].' . . . A limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id*. at ___, 126 S. Ct. at 2274 (internal citations omitted).

911 call for help and her responses to the emergency operator's questions were nontestimonial, whereas in *Hammon*, a police interview of the victim conducted at her home when police responded to a report of a domestic disturbance did produce testimonial statements subject to the Confrontation Clause.  The Court differentiated the hearsay in *Davis* from that in *Crawford* and *Hammon* by distinguishing between law enforcement officers' dual roles as emergency responders and as criminal investigators:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at ___, 126 S. Ct. at 2273-74.  Thus, statements to police are nontestimonial, the Court said, when a reasonable listener would recognize that the declarant is facing an ongoing emergency and making a call for help against a bona fide physical threat.  *Id.* at ___, 126 S. Ct. at 2276.  Such dialogues are not conducted primarily to establish some past fact, but to ascertain present circumstances requiring police assistance, and the interrogation and responses are necessary to resolve the emergency.  *Id.* at ___, 126 S. Ct. at 2269, 2276.  In this emergency context, the Court said, the declarant is not acting as a witness and is not *testifying*, and what the declarant says is not "'a weaker substitute for live testimony' at trial."  *Id.* at ___, 126 S. Ct. at 2277 (quoting *United States v. Inadi*, 475 U.S. 387, 394 (1986)).

Investigative interrogations on the other hand, are directed at establishing the facts of a past crime in order to identify, or provide evidence against, the perpetrator.  *Davis*, ___ U.S. at ___, 126 S. Ct. at 2276.  The product of an investigative interrogation is testimonial in that it is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Id.*  The witness typically will be describing past events in response to questioning designed to elicit what had happened in the past.  In the investigative interrogations at issue in *Davis*, the

---

Consequently, after finding that the statement in *Davis* was nontestimonial, the Court did not go on to conduct a *Roberts* analysis.

Court said, "the *ex parte* actors and the evidentiary products of the *ex parte* communication aligned perfectly with their courtroom analogues." *Id.* at ___, 126 S. Ct. at 2277.

*Davis* also indicates that some level of "formality" is a factor in characterizing a statement as "testimonial." *Id.* at ___, 126 S. Ct. at 2277-78. Contrasting the level of formality between the victim's statements in *Davis* and the statement given to police interrogators in *Crawford*, the Court noted that the *Davis* victim gave frantic answers over the telephone in an environment that was not tranquil or even safe, whereas the witness in *Crawford* was responding calmly, at a police station house, to a series of questions while the officer-interrogator taped and made notes of her answers. The statement given to an officer in *Hammon*, the Court determined, possessed sufficient formality to be deemed testimonial. Although the station house setting, tape recording, and *Miranda* warnings[4] that contributed to the formality in *Crawford* were absent in *Hammon*, it was "formal enough" that the interrogation of the *Hammon* victim was conducted in a separate room, away from the perpetrator, with the officer receiving her replies for use in his investigation. *Id.* at ___, 126 S. Ct. at 2278.[5] Statements elicited during official investigation generally are not made under oath, but they are imbued with solemnity and formality, the Court said, because deliberately lying to an officer would be a criminal offense subject to severe consequences. *Id.* at ___, 126 S. Ct. at 2276, 2278 n.5. The Court deemed these statements an "obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." *Id.* at ___, 126 S. Ct. at 2278 (emphasis in original).

Turning to the case before us, it cannot be seriously disputed that the interview of A.H. by the STAR nurse bears far more similarity to the police interviews in *Crawford* and *Hammon* than to the 911 call at issue in *Davis*. A.H. gave her statement several hours after the alleged criminal event; it was not a plea for assistance in the face of an ongoing emergency, but a recitation of events that occurred earlier that day. A.H. was separated from the perpetrator in a

---

[4]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[5]     Even formal interrogation may not be a prerequisite, for the Court disclaimed any implication that statements made in the absence of interrogation are necessarily nontestimonial, noting that the framers of the Constitution "were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation." *Davis*, ___ U.S. at ___ n.1, 126 S. Ct. at 2274 n.1.

5

safe, controlled environment and responded calmly to the questions. Although it would not have been a crime for A.H. to lie to the nurse, and the interview therefore lacked one of the formality components present in *Hammon* and *Crawford*, A.H.'s interview did have many trappings of formality, including structured questioning in a closed environment, supervision by a police officer, and recordation by videotape. Perhaps of greatest importance, the statement that A.H. gave was precisely the kind of statement that a witness would give on direct examination at trial. At the outset, the interviewer asked several preliminary questions to ensure that A.H. knew the difference between the truth and a lie, and asked A.H. to correct the interviewer if she said something inaccurate. These questions very much resemble the initial questions a prosecutor would ask when examining a child witness on the stand, and the substantive questioning that followed elicited the details of the crime and the identity of the perpetrator. A.H.'s statements in the interview "aligned perfectly with their courtroom analogues." *Id.* at ___, 126 S. Ct. at 2277.

There remains to be considered, however, one distinction between A.H.'s statements and those considered in *Crawford*, *Davis,* and *Hammon*: A.H. was interviewed not by a police officer but by a sexual abuse trauma nurse. Thus far, the only unsworn statements that the Supreme Court has branded as testimonial are statements made during interrogations by law enforcement officers; and the Court has noted that "[i]involvement of *government officers* in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse . . . ." *Crawford*, 541 U.S. at 56 n.7 (emphasis added). *Davis* suggests, however, that statements made to persons other than law enforcement officers can be testimonial. In *Davis*, the Court assumed, without deciding, that the 911 operator was an agent of law enforcement. Because the statement was nontestimonial in character, regardless of who received it, it was unnecessary for the Court to decide whether statements made to someone other than law enforcement personnel may be testimonial. *Davis*, ___ U.S. at ___ n.2, 126 S. Ct. at 2274 n.2. Nevertheless, the Court also said, "If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers," *id.*, suggesting that statements may be testimonial if the interviewer is acting as an "agent" of the police.

In the present case, it is clear that the interviewer acted in concert with or at the behest of the police. The interviewing nurse described herself as a "forensic interviewer and sexual assault

6

nurse examiner."[6] Police directed the victim's mother to take her to the STAR Center, and an officer watched the interview from another room. Toward the end of the interview, the nurse inquired of the officer whether all the questions that the officer desired had been asked, and then returned to the interview room with several additional queries, apparently at the officer's instruction. In addition, the nurse testified that the purpose of the questioning was in preparation for trial and that she knew the interview would be used in a subsequent criminal prosecution. There is no evidence that the interview had a diagnostic, therapeutic or medical purpose. The conclusion is inescapable that the nurse was acting in tandem with law enforcement officers to gain evidence of past events potentially to be used in a later criminal prosecution. *Accord*, *Maryland v. Snowden*, 867 A.2d 314, 326-27 (Md. 2005) (Sexual abuse investigator was performing her responsibilities at the behest of law enforcement, rendering the interview a functional equivalent of formal police questioning.); *State v. Mack*, 101 P.3d 349, 352-53 (Or. 2004) (Caseworker who interviewed a child so that police officers could videotape the child's statement for use in a criminal proceeding was "serving as a proxy for the police."); *T.P. v. State*, 911 So.2d 1117, 1123 (Ala. Crim. App. 2004) (Because the child's statements were the result of an interview conducted by a social worker and an police investigators as part of a criminal investigation, the interview was similar to a police interrogation.); *State v. Blue*, 717 N.W.2d 558 (N.D. 2006) (Videotaped interview conducted by a forensic interviewer at a private child advocacy center while a police officer watched from a different room was testimonial, as the interviewer was either acting in concert with or as an agent of the government.); *In re Rolandis G.* 817 N.E.2d 183, 188 (Ill. App. 2004) (Statements to a child advocacy worker were testimonial when they came in response to formal questioning, with a police officer watching through a two-way mirror.); *In re T.T.*, 815 N.E.2d 789, 801-803 (Ill. App. 2004) (Where the social worker works at the behest of and in tandem with the State's Attorney with the intent and purpose of assisting in the prosecutorial effort, he is an agent of the prosecution, even in the absence of police officers.). Accordingly, we conclude that the statements given by A.H. during the STAR Center interview were testimonial.

---

[6] "Forensic" means "of, relating to or denoting the application of scientific methods and techniques to the investigation of a crime" or "of or relating to courts of law." THE NEW OXFORD AMERICAN DICTIONARY 663 (2001).

The State has urged us to hold that A.H.'s interview was not testimonial because a six-year-old child like A.H. would not have understood that her statements would be subject to later use at trial. The State's argument relies upon language from *Crawford* discussing, as testimonial, statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52. The State's argument draws some support from decisions rendered after *Crawford* but before *Davis*, where the courts extracted from *Crawford* a test inquiring whether an objectively reasonable person in the declarant's position--taking into account the declarant's age--would believe that the statement could be used later at a trial. *See*, *e.g.*, *State v. Scacchetti*, 690 N.W.2d 393, 396 (Minn. Ct. App. 2005) (concluding that *Crawford* would require exclusion of statements only if surrounding circumstances would have led a three-year-old declarant to believe her disclosures would be available for use at trial); *State v. Brigman*, 615 S.E.2d 21, 25-26 (N.C. Ct. App. 2005) (holding that five-year-old declarant was unlikely to understand the potential for his statements to be used prosecutorially). We conclude, however, that while these courts' analyses may have represented a reasonable interpretation of *Crawford*, they have been discredited by *Davis*, which focuses not at all on the expectations of the declarant but on the content of the statement, the circumstances under which it was made, and the interrogator's purpose in asking questions.

Adhering, as we must, to the Supreme Court's explication of the Confrontation Clause in *Davis*, we hold that the district court erred in overruling Hooper's objection to the admission of the videotape of the STARS interview. Because A.H.'s responses during the interview bear the indicia of testimonial statements and were given in response to questions by an interrogator acting in tandem with police, we hold that the statements are testimonial hearsay. Their use in evidence against Hooper is therefore barred by the Confrontation Clause because Hooper had no opportunity to cross-examine A.H.

The State contends that even if admission of the videotaped interview was in error, the error does not require reversal of Hooper's conviction. Idaho Criminal Rule 52 provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Therefore, a new trial is unnecessary if the error was harmless. *State v. Scovell*, 136 Idaho 587, 593, 38 P.3d 625, 631 (Ct. App. 2001). Even a constitutional error can be harmless if it was unimportant or insignificant in the circumstances of the particular case.

8

*Chapman v. California*, 386 U.S. 18, 21-22 (1967). "The test for harmless error . . . is whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence." *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *State v. Slater*, 136 Idaho 293, 300, 32 P.3d 685, 692 (Ct. App. 2001).

The error here cannot be deemed harmless. Although there was other evidence against Hooper, it was not overwhelming. There was physical evidence that A.H.'s anus was enlarged and had suffered some damage, but also evidence that this condition could have been attributable to a medical condition, constipation, or an accident. Hooper presented rebuttal evidence, including evidence suggesting that A.H.'s mother concocted the story against Hooper for a vengeful purpose, perhaps even hosting a celebratory party after Hooper was arrested. In the videotaped interview, A.H. articulately provided a detailed description of her experience, which Hooper could not meet through cross-examination. Under these circumstances, we cannot confidently conclude that if A.H.'s interview had been excluded, a guilty verdict would nevertheless have been rendered. Accordingly, a new trial must be granted.

The exclusion of videotaped interviews in these circumstances will undoubtedly make it more difficult to prosecute some offenses against children who are too young or frightened to testify in court. In *Davis*, the Supreme Court acknowledged a similar risk of hampering domestic violence prosecutions because the victims often refuse to testify against their abusers. Recognizing that when this occurs, the Confrontation Clause "gives the criminal a windfall," the Court nevertheless admonished that courts may not "vitiate constitutional guarantees when they have the effect of allowing the guilty to go free." *Davis*, ___ U.S. at ___, 126 S. Ct. at 2280. This is not to say, however, that the only permissible method of child testimony is a live, in-court presentation at trial. What is necessary is an opportunity for cross-examination. Trial courts may be able to formulate alternatives that accommodate a child's capabilities and fears while also protecting the accused's constitutional rights. In this case, however, because Hooper's Confrontation Clause rights were violated, his conviction cannot stand.

**B.    Other Issues**

Hooper has raised two additional issues. First, he contends that the prosecutor made impermissible comments during closing argument, although he made no objection at the time. Because this issue was not preserved for appeal by timely objection in the trial court, and

because we are vacating the judgment of conviction for other reasons, we will not address this claim of prosecutorial misconduct.

Second, Hooper argues that the district court gave a jury instruction that impermissibly varied from the charging instrument in the description of the acts constituting the alleged offense, although he did not object to the instruction at trial. Because any alleged variance can be corrected should this case go to trial again, we do not address it here.

## III.

## CONCLUSION

Because Hooper's constitutional right to confront adverse witnesses was violated by the admission of the videotaped interview of A.H., the judgment of conviction is vacated and the case is remanded for further proceedings.

Judge GUTIERREZ and Judge Pro Tem WALTERS **CONCUR.**