992 P.2d 1211

**In the Interest of John Doe, a Juvenile Under Eighteen (18) Years of Age.**

**John DOE,**

v.

**STATE of Idaho, Respondent.**

No. 24850.

Court of Appeals of Idaho.

Dec. 10, 1999.

Jensen & Burr–Jones, Burley, for appellant. Kent D. Jensen argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Chief Judge.

John Doe, a juvenile, appeals from the order of the district court affirming the magistrate's decree that Doe falls within the purview of the Juvenile Corrections Act for committing three acts of lewd and lascivious conduct. For the reasons set forth below, we affirm the district court's order in part, reverse in part, and remand.

## I.

## FACTS AND PROCEDURE

Doe, age 12, was charged by petition under the Juvenile Corrections Act with four counts of lewd and lascivious conduct for the manual-to-genital and manual-to-anal touching of two young girls, D.W., age 7, and K.W., age 5. Doe entered a denial to all offenses.

Evidence presented at the adjudicatory hearing revealed that Doe and another juvenile, I.F., age 14, arrived at I.F.'s home, where I.F.'s sister was babysitting the victims. I.F. testified that while in the bathroom together, Doe indicated to I.F. that he wanted to "finger" the victims. I.F. agreed and they returned to the living room. Doe and I.F. sat together in a recliner and had

K.W. lay across their laps. I.F. testified that he "fingered" K.W. while Doe watched, after which Doe moved to the bed next to the recliner. D.W. then sat by I.F. in the recliner, and I.F. "fingered" her while Doe again watched. I.F. testified that Doe did not actively participate in the lewd acts.

On the day following the alleged abuse, the victims were taken by their mother to a hospital to be examined for sexual assault. The attending physician reported that both victims had stated that they were sexually abused by I.F. and that neither victim mentioned Doe during the medical examination. At the hospital, the victim's mother submitted a written statement to the police that the victims had only implicated I.F., and not Doe, as the person whom had sexually assaulted them.

Approximately eleven days after the alleged abuse occurred, videotaped interviews of both victims were conducted as part of the Children at Risk Evaluation Service (CARES) program. These interviews produced conflicting statements concerning who actively participated in the lewd acts. In her interview, D.W. never mentioned Doe as an active participant in the molestation. In K.W.'s interview, she initially gave an extensive description of how I.F. had pulled down her pants and touched her with his finger, making no mention of such actions by Doe. It was only after the interviewer. asked, "Did [Doe] help pull down your pants?" and "Did [Doe's] finger go anywhere?" that K.W. indicated that Doe had participated.

The state sought to introduce these videotapes at Doe's adjudicatory hearing without calling either victim or showing that they were unavailable or incompetent to testify. Doe objected, arguing that the videotapes were inadmissible under the Confrontation Clause of the Sixth Amendment. The magistrate overruled Doe's objection and admitted the videotapes. After the state had rested its case, Doe renewed his Confrontation Clause objection and further asserted, for the first time, an objection on hearsay grounds that the admission of the videotapes had violated the notice requirement of I.R.E.

803(24). The magistrate again overruled Doe's objections.

At the conclusion of the adjudicatory hearing, the magistrate found Doe to be within the purview of the Juvenile Corrections Act on three counts of lewd and lascivious conduct—two counts of aiding and abetting I.F.'s conduct and one count as an actual actor. The fourth count was dismissed upon motion of the state for lack of evidence.

At the disposition hearing, the magistrate committed Doe to the Department of Juvenile Corrections until he reaches the age of twenty-one. Doe appealed to the district court, which affirmed the magistrate's decision. Doe again appeals.

## II.

### ANALYSIS

**A. Standard of Review**

On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bitt,* 118 Idaho 584, 585 n. 1, 798 P.2d 43, 44 n. 1 (1990); *State v. Bowman,* 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct. App.1993). When a violation of a constitutional right is asserted, the appellate court should give deference to the trial court's factual findings unless those findings are clearly erroneous. *State v. Peightal,* 122 Idaho 5, 7, 830 P.2d 516, 518 (1992); *State v. Knapp,* 120 Idaho 343, 346, 815 P.2d 1083, 1086 (Ct.App.1991). However, the appellate court exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Peightal,* 122 Idaho at 7, 830 P.2d at 518; *Knapp,* 120 Idaho at 346, 815 P.2d at 1086.

**B. Confrontation Clause**

Doe argues on appeal that the admission of the CARES videotapes violated the Confrontation Clause of the Sixth Amendment.[1] Therefore, Doe asserts that

---

1. Doe fails to argue on appeal that the admission
of the videotapes at his adjudicatory hearing

his adjudication should be vacated. In order to mandate a reversal, however, it must be shown that the objectionable evidence contributed to the verdict and thereby affected the substantial rights of the defendant. *State v. Gray,* 129 Idaho 784, 791, 932 P.2d 907, 914 (Ct.App.1997); *State v. Cliff,* 116 Idaho 921, 924, 782 P.2d 44, 47 (Ct.App.1989). The magistrate specifically found that the videotapes did not contribute to its decision that Doe fell within the purview of the Act on the two counts of aiding and abetting. Doe has failed to show any error in that finding. Thus, the magistrate's decision as to these two counts is hereby affirmed. However, because the videotapes contributed to the magistrate's decision that Doe fell within the purview of the Act on the remaining count, we must consider whether the admission of the videotapes violated the Confrontation Clause.

■ The Confrontation Clause of the Sixth Amendment provides that the accused has a right in all criminal prosecutions to be confronted with the witnesses against him or her. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 678 (1990). While a literal interpretation of the Confrontation Clause might bar the use of all hearsay when the declarant is unavailable, the United States Supreme Court has rejected that view as "unintended and too extreme." *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 606 (1980); *see also Craig,* 497 U.S. at 847, 110 S.Ct. at 3164, 111 L.Ed.2d at 679. *Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638, 650–51 (1990); *Bourjaily v. United States,* 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 156 (1987).

In *Roberts,* the United States Supreme Court addressed the issue of whether the admission of a transcript of testimony that was given under oath in a prior judicial proceeding had satisfied the Confrontation Clause of the Sixth Amendment. *Roberts,* 448 U.S. at 58–62, 100 S.Ct. at 2535–37, 65 L.Ed.2d at 602–05. In reaching its holding, the Court set forth a general approach for determining when the admission of hearsay satisfies the requirements of the Confrontation Clause. The general approach set forth in *Roberts* required that the hearsay declarant be shown to be unavailable if not produced for cross-examination and that the hearsay bear adequate indicia of reliability. *Id.* at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 607–08

Doe does not contend on appeal that the videotapes lacked adequate indicia of reliability. Doe contends that the videotapes were introduced without a showing of the declarant's unavailability and that the Confrontation Clause was, therefore, violated. In response, the state argues that the unavailability requirement was abolished as a prerequisite to the admission of all hearsay, except for former testimony, in *White v. Illinois,* 502 U.S. 346, 353–54, 112 S.Ct. 736, 741–42, 116 L.Ed.2d 848, 857–58 (1992). For this proposition, the state relies upon a single sentence from *White.* However, we decline to read a single sentence, taken out of context, so broadly. When read in context, the language upon which the state relies carries a much different meaning from that which the state proposes. In this vein, we give context to the statement relied upon by the state.

In *White,* the petitioner argued as a threshold issue that *Roberts* stood for the proposition that the unavailability of the declarant is an absolute prerequisite to the admission of hearsay. *Id.* at 353–54, 112 S.Ct. at 741–42, 116 L.Ed.2d at 857–58. In response, the *White* Court indicated that it had previously rejected this argument:

In [*U.S. v.*] *Inadi* [, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986),] we considered the admission of out-of-court statements made by a co-conspirator in the course of the conspiracy. As an initial matter, we rejected the proposition that

violated the Idaho Constitution. Thus, we do not address whether the Idaho Constitution is appli-

cable to Doe's case.

*Roberts* established a rule that "no out-of-court statement would be admissible without a showing of unavailability." To the contrary, rather than establishing "a wholesale revision of the law of evidence" under the guise of the Confrontation Clause, we concluded that "*Roberts* must be read consistently with the question it answered, the authority it cited, and its own facts."

*White*, 502 U.S. at 353–54, 112 S.Ct. at 741–42, 116 L.Ed.2d at 857–58 (citations omitted). Thus, the holding in *Roberts* was confined to a single, limited proposition—that a showing of unavailability was required prior to "the introduction at trial of a transcript containing testimony from a probable-cause hearing, where the transcript included testimony from a witness not produced at trial but who had been subject to examination by the defendant's counsel at the probable-cause hearing." *White*, 502 U.S. at 353, 112 S.Ct. at 741, 116 L.Ed.2d at 857 *see also United States v. Inadi*, 475 U.S. 387, 394, 106 S.Ct. 1121, 1125, 89 L.Ed.2d 390, 398 (1986). Reiterating this confinement of *Roberts*, the *White* Court explained that "*Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White*, 502 U.S. at 354, 112 S.Ct. at 741, 116 L.Ed.2d at 858. Ultimately, the Court "refused to extend the unavailability requirement established in *Roberts* to all out-of-court statements." *White*, 502 U.S. at 354, 112 S.Ct. at 741, 116 L.Ed.2d at 858.

■ As we interpret *White*, the Court did not abolish the unavailability analysis as suggested by the state, but rather refused to apply the unavailability analysis to the admission of *all* hearsay. The state in the instant case argues that the unavailability analysis *never* applies except to the admission of former testimony. The petitioner in *White* argued that unavailability analysis *always* applies. By rejecting the petitioner's argument in *White*, the Court rejected only the extreme to which the unavailability analysis might have applied. By holding that the unavailability analysis does not always apply, the Court in *White* does not thereby hold that unavailability analysis never applies.[2] Consequently, the Court left open the possibility that the Confrontation Clause may require unavailability analysis as a prerequisite to the admission of the videotaped statements in the instant case, a type of hearsay not specifically addressed in *White*, *Inadi*, or *Roberts*. Thus, we must determine whether the Confrontation Clause requires a showing of witness unavailability prior to the admission of the videotaped statements in Doe's adjudicatory hearing.

In *Inadi*, the Court offered a number of reasons why a showing of unavailability was *required as a prerequisite to the admission of* hearsay statements made in the course of a prior judicial proceeding (former testimony):

> Unlike some other exceptions to the hearsay rules, or the exemption from the hearsay definition involved in this case, former testimony often is only a weaker substitute for live testimony. It seldom has independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on

2. We acknowledge that other jurisdictions are not in accord with this interpretation. *See, e.g., United States v. Rith*, 164 F.3d 1323 (10th Cir. 1999); *United States v. Ismoila*, 100 F.3d 380 (5th Cir.1996); *Williamson v. State*, 707 A.2d 350 (Del.1998); *People v. Peck*, 285 Ill.App.3d 14, 220 Ill.Dec. 897, 674 N.E.2d 440 (1996); *State v. Sutherland*, 939 S.W.2d 373 (Mo.Banc.1997); *State v. Jackson*, 348 N.C. 644, 503 S.E.2d 101 (1998); *State v. Hutto*, 325 S.C. 221, 481 S.E.2d 432 (1997); *State v. Ackerman*, 90 Wash.App. 477, 953 P.2d 816 (1998); *State v. Kennedy*, 517 S.E.2d 457 (W.Va.1999).

However, our interpretation of *White* is supported by the remainder of the *White* opinion in that the Court, after clarifying the scope of *Roberts*, addresses whether the Confrontation Clause requires an unavailability analysis prior to the admission of the hearsay at issue. The Court would not have been required to reach this issue if *Roberts* and *Inadi* stood for the proposition that unavailability analysis was never required except in the case of the admission of former testimony.

the weaker version. When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence.

*Inadi,* 475 U.S. at 394, 106 S.Ct. at 1125, 89 L.Ed.2d at 398.

■ However, as held in *Inadi* and *White,* the Confrontation Clause does not always require a showing of witness unavailability when admitting hearsay. For example, the Confrontation Clause does not require a showing of unavailability prior to the admission of incriminating out-of-court statements made by nontestifying co-conspirators, out-of-court spontaneous declarations, or statements made for medical treatment. *Id.* at 394–400, 106 S.Ct. at 1125–29, 89 L.Ed.2d at 397–402; *White,* 502 U.S. at 357, 112 S.Ct. at 743, 116 L.Ed.2d at 860.

In *Inadi,* the Court held that the Confrontation Clause did not require a showing of unavailability prior to the admission of co-conspirator hearsay statements. *Inadi,* 475 U.S. at 399–400, 106 S.Ct. at 1128–29, 89 L.Ed.2d at 401–02. The Court explained that, unlike prior testimony which is "intended to replace live testimony," co-conspirator statements are made while the conspiracy is in progress and provide evidence of the conspiracy's context that cannot be replicated in court. *Id.* at 394–95, 106 S.Ct. at 1125–26, 89 L.Ed.2d at 397–98.

> When the government ... offers the statement of one drug dealer to another in furtherance of an illegal conspiracy, the statement often will derive its significance from the circumstances in which it was made. Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand. Even when the declarant takes the stand, his in-court testimony seldom will reproduce a significant portion of the evidentiary value of his statements during the course of the conspiracy.

*Id.* at 395, 106 S.Ct. at 1126, 89 L.Ed.2d at 398. The Court stated that the "admission of co-conspirators' declarations into evidence thus actually furthers the Confrontation Clause's very mission which is to advance the accuracy of the truth-determining process in criminal trials." *Id.* at 396, 106 S.Ct. at 1126, 89 L.Ed.2d at 399 (citations omitted).

In *White,* the Court held that the Confrontation Clause did not require a showing of unavailability prior to the admission of out-of-court spontaneous declarations or statements made for medical treatment. *White,* 502 U.S. at 357, 112 S.Ct. at 743, 116 L.Ed.2d at 860. The Court's holding was based on two factors. First, the context in which these hearsay declarations are made "cannot be recaptured even by later in-court testimony." *Id.* at 356, 112 S.Ct. at 742, 116 L.Ed.2d at 859.

> A statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with · a trier of fact than a similar statement offered in the relative calm of a courtroom. Similarly, a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony. They are thus materially different from the statements at issue in *Roberts,* where the out-of-court statements sought to be introduced were themselves made in the course of a judicial proceeding, and where there was consequently no threat of lost evidentiary value if the out-of-court statements were replaced with live testimony.

*Id.* at 356, 112 S.Ct. at 742–43, 116 L.Ed.2d at 859. Second, these hearsay declarations were admitted under firmly rooted hearsay exceptions and are thus so trustworthy that adversarial testing can be expected to add little to their reliability. *Id.* at 357, 112 S.Ct. at 743, 116 L.Ed.2d at 860. "Where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *Id.* at 356, 112 S.Ct. at 743, 116 L.Ed.2d at 859.

■ In the instant case, the videotaped statements were admitted pursuant to the

"catch-all" hearsay exception, I.R.E. 803(24). This hearsay exception is not firmly rooted. *Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638, 653 (1990). Thus, further analysis is required to determine whether the admission of the videotaped statements satisfied the Confrontation Clause.

We are persuaded that the reasons for applying unavailability analysis to the admission of former testimony readily apply to the admission of the videotaped statements in the instant case.[3] As stated above, the Court in *Inadi* held that a showing of the declarant's unavailability was a prerequisite to the admission of former testimony because former testimony had "little independent evidentiary significance of its own, but is intended to replace live testimony." *Inadi,* 475 U.S. at 394, 106 S.Ct. at 1126, 89 L.Ed.2d at 398. As with former testimony, the context in which the videotaped statements were made does not contribute to the probative value of the statements. The videotaped statements derive their probative value from their description of the alleged sexual abuse and not from the fact that the statements were made to a CARES interviewer approximately two weeks after the alleged abuse occurred. Because the probative value of the videotaped statements is not dependent upon the context in which the statements were made, the videotaped hearsay statements do not carry independent evidentiary significance that cannot be replicated in court. Live, in-court testimony by the victims would, therefore, be no less probative than the videotaped statements. As a result, there is "no threat of lost evidentiary value if the out-of-court statements [are] replaced with live testimony." *White,* 502 U.S. at 358, 112 S.Ct. at 743, 116 L.Ed.2d at 859. When two equally probative versions of the same evidence is available, the live testimony is not only favored by the Confrontation Clause but required unless the hearsay declarant is shown to be unavailable. *Inadi,* 475 U.S. at 394, 106 S.Ct. at 1125, 89 L.Ed.2d at 398.

Moreover, we are persuaded that the fundamental purposes of the Confrontation Clause would be undermined if the videotaped statements in the instant case were admissible absent a showing of unavailability of the declarants. The Fifth Circuit Court of Appeals has addressed whether the admission of a videotape containing statements made by a sexually abused child violated the Confrontation Clause when the declarants were not called to testify and were not shown to be unavailable. *Offor v. Scott,* 72 F.3d 30 (5th Cir.1995). In holding that the Confrontation Clause had been violated, the court stated the following:

> The Confrontation Clause exists in part to keep criminal proceedings fair, and the admission of the videotape casts serious doubts on the fairness of Offor's trial. The jury heard evidence from defense witnesses that the victim was a troubled child, desperate for attention, who had previously fabricated allegations of sexual abuse against adults disciplining her. The jury was entitled to find this evidence unworthy of credence. This evidence, however, showed that the state ran at least two risks in calling the victim to the stand. The victim might change or alter her story, or concede that she had fabricated the entire incident. Alternatively, the victim might testify to incidents of sexual abuse so great in number and under such impossible circumstances so as to undermine her credibility to the jury. The videotape allowed the state to solve these problems neatly. The state succeeded in having the jury hear its version of the victim's story without running the risk that she might later undermine that version. The Confrontation Clause does not allow such neat solutions. Rather, it assures that cross-examination permits the kind of probing and testing that makes oral testimony reliable. That the state's purpose in using the videotape rather than a live witness was to protect the child does not change its effect.

*Id.,* at 33–34.

In the instant case, the magistrate heard evidence indicating that neither D.W. nor

---

**3.** *But see In re Welfare of L.E.P.,* 594 N.W.2d 163, 172 (Minn.1999) (holding that a videotape containing statements made by a sexually molested child to a nurse was similar to co-conspirator statements because it was equally irreplaceable as substantive evidence).

K.W. had implicated Doe as their abuser immediately following the incident. The victims were taken to the hospital by their mother for an examination on the day after the alleged abuse occurred. At the hospital, the victim's mother submitted a written statement to the police relating that when she arrived to pick up her daughters, K.W. had said that I.F. "was being nasty." The mother's statement further relates that I.F. confessed to the lewd acts when confronted and that K.W. and D.W. told their mother before going to the hospital exactly what I.F. had done to them. While at the hospital, K.W. and D.W. were examined by the attending physician. In his reports, the physician relates that both K.W. and D.W. stated that I.F. had assaulted them. There was no mention of Doe's name in either the physician's report or the mother's written statement. Within the first twenty-four hours after the alleged abuse, the victims implicated only I.F. and not Doe.

Eleven days after the alleged abuse occurred, both victims were interviewed as part of the CARES program. These interviews produced conflicting statements concerning who actively participated in the lewd acts. During the interview, D.W. repeated what she had told her mother and the physician eleven days earlier—that Doe had not participated in the lewd acts but had "just watched." However, during the interview, K.W. stated, in contravention of her earlier statements, that both I.F. and Doe had sexually abused her. At no time prior to her CARES interview, did K.W. implicate Doe as her abuser. She did so in the CARES interview only in response to a somewhat leading question from the interviewer. The sole piece of evidence presented to the magistrate implicating Doe as an actor in the lewd acts consisted of those statements made by five-year-old K.W. during an interview conducted eleven days after the alleged abuse occurred.

■ We do not suggest that that K.W.'s statements at her CARES interview lacked indicia of reliability for purposes of Confrontation Clause analysis. Indeed, Doe does not so contend on appeal. We also recognize that the magistrate, as the trier of fact, is entitled to determine the credibility of the witnesses, the weight given to the testimony and the reasonable inferences to be drawn from the evidence. *State v. Flowers,* 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct.App. 1998). However, the evidence presented to the magistrate shows that the state ran a serious risk in having K.W. testify. If called to testify, K.W. would have been required to choose between her conflicting statements concerning whether Doe had actually molested her. By only introducing K.W.'s videotaped CARES interview, the state was able to neatly sidestep the risks inherent in having K.W. testify. "The Confrontation Clause does not allow such neat solutions. Rather, it assures that cross-examination permits the kind of probing and testing that makes oral testimony reliable." *Offor,* 72 F.3d at 34. We are unpersuaded by the state's argument that the videotaped CARES interviews are innately more reliable than live, in-court testimony by young children. Thus, as was the case in *Offor,* the admission of the videotaped statements in the instant case casts serious doubts on the fairness of Doe's adjudicatory hearing.

Furthermore, requiring a showing of unavailability prior to the admission of the videotaped statements in the instant case will not result in a wholesale revision of the laws of evidence nor will it be over-burdensome to the judiciary. The practical burden placed on the prosecution will also be slight. Identifying, locating, and ensuring the availability of child declarants should be no more burdensome for the prosecution than procuring the attendance of other victim witnesses. If the prosecution demonstrates that a young child is unable to testify in a courtroom setting, the child will be considered an unavailable witness. *State v. Zimmerman,* 121 Idaho 971, 973, 829 P.2d 861, 863 (1992).

■ We hold that the Confrontation Clause required a showing of the victims' unavailability prior to the admission of the videotaped statements in the instant case. The state failed to make such a showing. Thus, we hold that the admission of the videotaped statements violated Doe's rights

under the Confrontation Clause of the Sixth Amendment.[4]

## III.

## CONCLUSION

For the foregoing reasons, we reverse the district court's conclusion that the Doe fell within the purview of the Juvenile Corrections Act for the one count of being an actual actor in the commission of lewd and lascivious conduct. We affirm the opinion of the district court affirming the magistrate's determination that Doe fell within the purview of the Juvenile Corrections Act on the two counts of aiding and abetting. We therefore affirm in part, reverse in part, and remand to the magistrate for further proceedings consistent with this opinion.

Judge LANSING, and Judge Pro Tem STICKLEN, concur.

4. In light of our holding, we find it unnecessary to address Doe's other claims on appeal.