176 P.3d 911

STATE of Idaho, Plaintiff–Respondent,

v.

Darren B. HOOPER, Defendant–Appellant.

No. 33826.

Supreme Court of Idaho,
Boise, September 2007 Term.

Dec. 24, 2007.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Paula M. Swensen argued.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

J. JONES, Justice.

Darren B. Hooper was convicted of lewd conduct with his daughter, six-year-old A.H. At trial, the district court deemed A.H. unavailable and admitted a videotaped interview of the child. After Hooper's conviction, the U.S. Supreme Court decided *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Hooper appealed. The Court of Appeals held that a videotaped interview of the child victim was testimonial under *Crawford* and *Davis,* that the admission of the videotape was error, and that the error was not harmless. The court vacated the conviction and remanded for further proceedings. This Court granted the State's petition for review. We hold that the videotaped statements were testimonial in nature, based on *Crawford* and *Davis,* and that admission of the statements was not harmless error. We vacate the conviction and remand the case for further proceedings.

## I.

On August 2, 2003, Crystal Hooper woke and learned Darren Hooper was in the bathroom with their daughter, A.H. The door was locked. Crystal Hooper used a screwdriver to open the bathroom door. She ordered A.H. into Crystal's bedroom and questioned Darren about his activities in the bathroom. Then, after speaking with A.H., Crystal accused Darren of sexually molesting A.H. and called the police.

When the police arrived, they questioned Darren and Crystal Hooper and attempted to question A.H. The police did not collect evidence at this time, but Detective Marshall and Detective Plaza arranged a forensic examination with on-call personnel at the Sexual Trauma Abuse Response ("STAR") Center in Ontario, Oregon.

At the STAR Center, Dr. De La Paz first talked with Crystal Hooper and then conducted a sexual abuse examination of A.H., during which she found breaking and swelling in the rectal area. Jeremi Helmick, a STAR Center nurse and forensic interviewer, interviewed A.H. after Dr. De La Paz completed the medical examination. Helmick videotaped the interview while Detective Plaza observed from another room via a closed circuit system. At the end of the interview, Detective Plaza talked with Helmick and Crystal Hooper. Plaza collected the videotape and two swabs taken during the physical examination and put them into evidence storage at the Payette Police Department. Following the examination and interview, the police returned to the Hooper home to collect evidence, including a sheet from A.H.'s bed, underwear belonging to A.H. and a washcloth from the bathroom.

Prior to trial, the State served notice of intent to introduce the videotaped interview of A.H. and hearsay statements made by A.H. to the forensic examiner, based on Idaho Rules of Evidence 803(24) and 804(5). The District Court reserved ruling on the matter. At trial, the State called A.H. to testify. After A.H. was unable to take the oath, the district court declared A.H. unavailable and the state sought to introduce the videotaped interview. The defense objected based on the Defendant's Sixth Amendment right to confront and cross-examine witnesses against him.[1] The court admitted the videotape over Defendant's objection, based on a pre-*Crawford* analysis, and played the video for the jury.

The jury found Mr. Hooper guilty of lewd and lascivious conduct with a minor child under the age of sixteen pursuant to Idaho Code § 19–1508. The District Court sentenced Mr. Hooper to six years imprisonment, with two and one-half years fixed. Mr. Hooper timely filed his Notice of Appeal from his Judgment of Conviction. The Court of Appeals held that the admission of the videotaped interview violated Mr. Hooper's right to cross-examine his accuser as guaranteed by the Confrontation Clause: "The conclusion is inescapable that the nurse was acting in tandem with law enforcement officers to gain evidence of past events potentially to be used in a later criminal prosecution." The court further held the error was not harmless. As a result, the court vacated the Judgment of Conviction and remanded the case. This Court granted the State's Petition for Review.

**II.**

The question presented is whether videotaped statements made by a child during an interview by a forensic examiner at a sexual trauma abuse response center are testimonial when the police directed the child to the center and observed the interview from another room. We hold that the videotaped statements were testimonial in nature, based on *Crawford* and *Davis*, and that admission of the statements was not harmless error. We vacate the conviction and remand the case for further proceedings.

**A.**

When considering a case on review from the Court of Appeals, this Court gives serious consideration to the Court of Appeals' decision. *State v. Cope*, 142 Idaho 492, 495, 129 P.3d 1241, 1244 (2006) (quoting *Garza v. State*, 139 Idaho 533, 535, 82 P.3d 445, 447 (2003)). This Court does not merely review the correctness of the decision. *Id.* Rather, the Court acts as though it is hearing the matter on direct appeal from the trial court's decision. *Id.*

1. Defense objected based on the Supreme Court's ruling in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). One month after Hooper's conviction, the U.S. Supreme Court decided *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which significantly altered the Confrontation Clause analysis. When the U.S. Supreme Court applies a rule of federal law to the parties before it, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993). *See also State v. Odiaga*, 125 Idaho 384, 387–88, 871 P.2d 801, 804–05 (1994). Thus, we apply *Crawford* and *Davis* here.

When a violation of a constitutional right is asserted, the appellate court should give deference to the trial court's factual findings unless those findings are clearly erroneous. *Doe v. State*, 133 Idaho 811, 813, 992 P.2d 1211, 1213 (Ct.App.1999) (citing *State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992)). The appellate court exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Id.* Hooper asserted below that admission of the videotaped interview violated his right to confront adverse witnesses under the Sixth Amendment's Confrontation Clause. This is a question of law over which the Court exercises free review. *See Doe*, 133 Idaho at 813, 992 P.2d at 1213.

**B.**

This is an issue of first impression for the Idaho Supreme Court. The U.S. Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), significantly altered the Supreme Court's Confrontation Clause analysis. A subsequent case, *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), further clarified *Crawford*, but left many issues unresolved. State courts have interpreted these cases in varying ways, and the parties in the present case similarly disagree on the proper application of the Supreme Court precedent.

Hooper contends the videotaped statements are testimonial because the forensic nurse examiner was acting as an agent of the police and no emergency existed at the time the statements were taken. According to Hooper, investigative interrogations are directed at establishing the facts of a past crime in order to identify, or provide evidence against, the perpetrator. Since the purpose of a forensic interview is to collect information to be used in a criminal prosecution, and there is a clear connection between the police and the STAR Center, the interview was the functional equivalent of a police interrogation. Thus, it is testimonial under *Crawford* and *Davis*, and inadmissible unless the witness is unavailable and the defendant

had a prior opportunity to cross-examine the witness.

The State argues the Court of Appeals erred in its application of *Davis* to this case. According to the State, *Davis* applies only to determine whether statements to law enforcement personnel or their agents are testimonial. Since Hooper has not shown the interviewer here was an agent of the police, *Davis* is inapplicable and the question is whether the statement at issue is one of the three "core testimonial statements" listed in *Crawford*. Pointing to the third formulation of "core testimonial statements," the State contends the evidence is nontestimonial because the defendant has not shown the circumstances of the interview would have led a child of the victim's age to reasonably believe she was making a statement for use at a later trial. The State asserts that, at most, Hooper is entitled to have this case remanded so that evidence of agency may be presented to the district court.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him." U.S. Const. amend. VI, *cited in Crawford*, 541 U.S. at 42, 124 S.Ct. at 1359, 158 L.Ed.2d at 187. Prior to *Crawford*, the Supreme Court held that the Confrontation Clause did not bar admission of an unavailable witness's statement against a criminal defendant if the statement bears "adequate indicia of reliability." *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. To meet that test, the declarant must be unavailable and evidence must either fall within a "firmly rooted hearsay exception" or "bear particularized guarantees of trustworthiness." *Id.*

*Crawford* altered this analysis with regard to testimonial statements. In *Crawford*, the Court held that testimonial statements of witnesses absent from trial are admissible only where declarant is unavailable and where defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 59, 124 S.Ct. at 1369, 158 L.Ed.2d at 197. Although the Court declined to spell out a comprehensive definition of "testimonial," the Court did set forth some guidelines. First, the Court looked to Webster's dictio-

nary definition of "testimony" from 1828. Testimony is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51, 124 S.Ct. at 1364, 158 L.Ed.2d at 192 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). The Court then listed three formulations of "core" testimonial statements:

(1) *"ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;"

(2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and

(3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Crawford*, 541 U.S. at 51–52, 124 S.Ct. at 1364–1365, 158 L.Ed.2d at 192–193 (internal citations omitted). This is not an exclusive list of "testimonial" evidence. Rather, these formulations all share a "common nucleus" and then define the Clause's coverage at various levels of abstraction around it. *Id.*

The determination of whether evidence is testimonial requires the court to consider the purpose behind the Confrontation Clause. The Supreme Court based its holding in *Crawford* on the historical underpinnings of the Confrontation Clause, and noted that the Sixth Amendment must be interpreted with this history in mind:

First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.... The Sixth Amendment must be interpreted with this focus in mind.

541 U.S. at 50, 124 S.Ct. at 1363, 158 L.Ed.2d at 192 . For example, the Court noted that statements taken by police officers in the course of interrogations are testimonial "under even a narrow standard" because police interrogations bear a "striking resemblance to examinations by justices of the peace in England." *Crawford*, 541 U.S. at 52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193. Thus, interrogations by law enforcement officers fall "squarely within that class" of testimonial hearsay. *Id.* In closing, the Court noted that "[W]hatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203.

The Supreme Court applied this new Confrontation Clause doctrine in consolidated cases *Davis v. Washington* and *Hammon v. Indiana*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). In *Davis*, the Supreme Court began with the clarification that "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Thus, the threshold question in a Confrontation Clause case is whether the statement is testimonial. If the evidence is testimonial, the evidence may be admitted only if the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 59, 124 S.Ct. at 1369, 158 L.Ed.2d at 197; *Davis*, 547 U.S. at 821, 126 S.Ct. at 2273, 165 L.Ed.2d at ——.

In *Davis*, the Supreme Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822, 126 S.Ct. at 2273–74, 165 L.Ed.2d at ——. Thus, a statement is testimonial under *Crawford* and *Davis* when the circumstances objectively indicate that the

primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution, unless made in the course of police interrogation under circumstances objectively indicating the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.[2] 547 U.S. at 822, 126 S.Ct. at 2274, 165 L.Ed.2d at ——.

The circumstances surrounding the statements in *Davis* led the Court to conclude the statements were nontestimonial. In reaching its holding, the Court articulated certain factors that distinguished the nontestimonial statements in *Davis* from the testimonial statements in *Crawford.* First, the witness in *Davis* was speaking about events as they were actually happening, rather than describing past events. 547 U.S. at 827, 126 S.Ct. at 2276, 165 L.Ed.2d at ——. Second, any reasonable listener would recognize the witness in *Davis* was facing an ongoing emergency. *Id.* Third, the nature of what was asked and answered in *Davis*, viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn what had happened in the past. *Id.* Finally, the Court elaborated on the different levels of formality between the two interviews. *Id.* Based on these factors, the Court held that the statements in *Davis* were nontestimonial:

> We conclude from all this that the circumstances of McCottry's interrogation objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency. She simply was not acting

as a witness: she was not testifying. What she said was not a "weaker substitute for live testimony."

547 U.S. at 828, 126 S.Ct. at 2277, 165 L.Ed.2d at ——. Comparing the statements made in *Davis* to those in *Crawford,* the Court noted that, unlike the situation in *Crawford,* where the ex parte actors and evidentiary products of the ex parte communications aligned perfectly with their courtroom analogues, the statements made in *Davis* did not. *Id.* ("No 'witness' goes to court to proclaim an emergency and seek help.").

The Court considered the same factors to hold the statements made in *Hammon* were testimonial. First, there was no emergency in progress. "It is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct—as, indeed, the testifying officer expressly acknowledged." 547 U.S. at 829, 126 S.Ct. at 2278, 165 L.Ed.2d at ——. "Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime." *Id.* In addition, the Court pointed to the formality of the statements, and that the statements were deliberately recounted in response to police questioning relating to how criminal conduct progressed: "Such statements under official interrogation are an obvious substitute for live testimony, because they do precisely what a witness does on direct examination; they are inherently testimonial." 547 U.S. at 830, 126 S.Ct. at 2278, 165 L.Ed.2d at ——. The Court distinguished the state-

---

**2.** In *Davis*, where the statements were made to a 911 operator during the course of a domestic disturbance, the statements met the emergency exception and were deemed nontestimonial. *See Davis*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224. The Court referred to its statement in *Crawford* that interrogations by law enforcement officers fall "squarely within the class" of testimonial hearsay, and noted that it had in mind interrogations directed at establishing the facts of a past crime in order to identify the perpetrator. 547 U.S. at 826, 126 S.Ct. at 2276, 165 L.Ed.2d at ——. The product of such interrogation is testimonial. *Id.* The Court assumed for the purposes of the decision that even if 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers and

therefore the court considered their acts to be the acts of the police for the purposes of the decision. 547 U.S. at 823 n. 2, 126 S.Ct. at 2274 n. 2, 165 L.Ed.2d at —— n. 2. Nevertheless, the statements were nontestimonial because they were not aimed at establishing the facts of a past crime, but rather describe a situation as it happened to enable police assistance for the victim. On the other hand, statements made to police officers who arrived on the scene after the disturbance had terminated, where the parties were separated and questioned individually, were deemed testimonial in *Hammon* because they were for the purpose of proving past events relevant to later criminal prosecution. 547 U.S. at 829–34, 126 S.Ct. at 2278–80, 165 L.Ed.2d at ——–——.

ments based on the purpose of the interview and the similarities between this interview and live testimony.

■ We will employ a totality of circumstances analysis in order to determine whether the videotaped statements here were testimonial in nature. In this case, the police detectives arranged an examination with forensically-trained personnel at the STAR Center. The referral by police officers, in and of itself, is not of great significance, absent evidence of the purpose of the referral. Similarly, the fact that an interviewer has forensic training does not, in and of itself, make the statements "testimonial" in nature. The purpose of such interviews can be two-fold—medical treatment and forensic use. Statements made to medical personnel have frequently been held to be nontestimonial when the primary purpose was treatment, even where police officers referred the child to the medical personnel. *See, e.g., People v. Vigil,* 127 P.3d 916, 923–24 (Colo. 2006) (statements made to a physician conducting a sexual assault exam were nontestimonial where the police officer was not involved in the medical examination and not present in the room when the doctor performed the examination); *Commonwealth v. DeOliveira,* 447 Mass. 56, 849 N.E.2d 218, 220 (2006) (child's statements to an emergency room physician were nontestimonial where police took the child to the emergency room to receive a medical assessment because the doctor's purpose was to determine whether the child was injured and whether she needed medical treatment); *State v. Krasky,* 736 N.W.2d 636, 642 (Minn.2007) (child's statements to nurse were nontestimonial even though police and social services jointly referred the child to the hospital where no law enforcement officer was present at the assessment and the primary purpose of the interview was to assess and protect the child's health and welfare).

A review of the factors in this case indicates that the interview was geared toward gathering evidence, rather than providing medical treatment. When the Officers questioned Darren Hooper, the accused abuser, Detective Marshall informed him that the child would be going to the STAR Center for an interview, and that "depending on the type of information [he] get[s] back from there, gonna depend on what kind of action is done." The Detective also asked Hooper whether there was any information A.H. was going to divulge to the counselors that Marshall should know "before [he] hear[s] it from them." *See Davis,* 547 U.S. at 829, 126 S.Ct. at 2278, 165 L.Ed.2d at ——. At the STAR Center, Detective Plaza observed the interview via a closed circuit system.

At the beginning of the interview, Helmick showed A.H. the camera and stated "That's where my special camera is and that makes it so I don't have to write everything down we talk about, cause I forget stuff sometimes, okay? ... and my friend John [Detective Plaza] is watching to make sure that I remember to ask all the questions I need to ask, okay?" Helmick commenced the interview by describing certain rules to A.H. with regard to telling the truth: "Make sure that what we talk about is only the truth in here, okay?" Helmick then proceeded to ask questions regarding the event in question. She sought details, including questions seeking to identify the perpetrator: Who is that? What was his name? Where were you when that happened? How many times did it happen? Toward the end of the interview, Helmick consulted with the detective. When she returned to the room, she said "I did forget just a couple things," and continued to ask a few questions regarding specific details of what happened in the bathroom. At the end of the interview the detective talked with Helmick and Crystal Hooper, then collected the videotape and two swabs taken during the physical examination and put them into evidence storage at the Payette Police Department. The police also returned to the Hoopers' home to collect additional evidence following the interview. These factors suggest the STAR Center interviewer was working in concert with the police to establish or prove past events relevant to a later criminal prosecution.

Based on the foregoing facts, we hold the videotaped statements were testimonial under *Crawford* and *Davis.* The circumstances surrounding this particular case objectively indicate that the primary purpose of the

interview was to establish or prove past events potentially relevant to later criminal prosecution, as opposed to meeting the child's medical needs. Helmick did not ask any questions regarding A.H.'s medical condition, or whether the child was injured. Further, this interview took place after a medical assessment and separately from the medical assessment. The police officer was present only at the second interview, not during Dr. De La Paz' examination. Unlike the situation in *Davis,* there is no evidence the statements were made in the course of police interrogation under circumstances objectively indicating the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency. The parties clearly anticipated that the videotaped statements would provide a substitute for the child's live testimony in court. Thus, the statements are admissible only if A.H. was unavailable and only if the defendant had a prior opportunity to cross-examine the witness. Since Hooper had no prior opportunity to cross-examine A.H., it was error to admit the videotape in evidence at trial.

### C.

The State argues that even if the videotaped statements are testimonial in nature, the admission of the statements at trial was harmless error. An error that does not affect a defendant's substantial rights is considered harmless and does not require reversal or a new trial. *State v. Doe,* 137 Idaho 519, 527, 50 P.3d 1014, 1022 (2002). Whether a conviction for a criminal offense should stand when a state has failed to accord a constitutionally guaranteed right is a federal question. *Chapman v. State of California,* 386 U.S. 18, 20–21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967). Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Id.* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710. The test for harmless error is whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence. *Doe,* 137 Idaho at 527, 50

P.3d at 1022 (quoting *State v. Moore,* 131 Idaho 814, 821, 965 P.2d 174, 181 (1998)).

Idaho courts applied the harmless error test to Confrontation Clause violations prior to *Crawford* and *Davis.* *See, e.g., Doe,* 137 Idaho at 526–27, 50 P.3d at 1021–22; *State v. Green,* 136 Idaho 553, 557, 38 P.3d 132, 136 (Ct.App.2001) ("A Confrontation Clause violation does not automatically require reversal; rather, the doctrine of harmless error applies."). In addition, courts in other states have applied the harmless error test to Confrontation Clause violations after *Crawford* and *Davis.* *See, e.g., State v. Blue,* 717 N.W.2d 558, 566 (N.D.2006); *State v. Justus,* 205 S.W.3d 872, 880–81, 878 (Mo. 2006). There is no reason to assume the harmless error test would not apply post-*Crawford.*

Whether an error is harmless in a particular case depends upon a host of factors, including the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Green,* 136 Idaho at 558–559, 38 P.3d at 136–37 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986)). In this case, the child's testimony was essential. Although there was some corroborating evidence, much of the physical evidence was inconclusive. We cannot find beyond a reasonable doubt that the jury would have reached the same result had the videotape been excluded.

### III.

We vacate the conviction and remand the case for further proceedings consistent with this opinion. This result renders a discussion of additional issues unnecessary because Hooper's additional issues can be corrected on remand. Specifically, in response to Hoo-

per's argument that the jury instruction created a fatal variance from the indictment, we note that the jury instruction should match the indictment on remand. *See State v. Sherrod*, 131 Idaho 56, 59, 951 P.2d 1283, 1286 (Ct.App.1998).

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and Justice Pro Tem TROUT concur.