5 So.3d 653 (2008)
Latarence J. BENSON
v.
STATE of Alabama.
CR-06-0170.
Court of Criminal Appeals of Alabama.
February 1, 2008.
Rehearing Denied March 28, 2008.
Denial of Rehearing Set Aside April 24, 2008.
Rehearing Denied June 20, 2008.
Certiorari Denied September 12, 2008 Alabama Supreme Court 1070912.
Donald L. Colee, Jr., Birmingham, for appellant.
*654 Troy King, atty. gen., and Stephen N. Dodd, asst. atty. gen., for appellee.
McMILLAN, Judge.
AFFIRMED BY UNPUBLISHED MEMORANDUM.
WISE, J., concurs.
BASCHAB, P.J., and SHAW, J., concur in the result.
WELCH, J., concurs in the result, with opinion.
WELCH, Judge, concurring in the result.
Latarence J. Benson was indicted on charges of first-degree burglary (CC-05-1913), and first-degree rape (CC-05-1914), against S.S.[1] The trial court sentenced him, as a habitual offender with one prior felony conviction, to life imprisonment for each conviction.
Benson's assertion on appeal that the trial court erred in allowing nurse Tonya Manfrey to testify regarding statements S.S. made to her during Manfrey's triage[2] assessment of S.S. Benson argued at trial and on appeal that because S.S. died before trial from unrelated causes and was thus unavailable for cross-examination, the admission into evidence of what Benson describes as "testimonial" out-of-court statements that she made to nurse Manfrey violated the Confrontation Clause of the United States Constitution and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). I note that Manfrey also completed a "rape kit" on S.S. However, the statements attributed to S.S. were apparently made during the triage.
In its unpublished memorandum, the Court found that a discussion of the Confrontation Clause was unnecessary. The unpublished memorandum disposed of the issue by ruling that "[t]he admission of Manfrey's testimony was not reversible error because evidence of sexual assault had already been admitted, without objection, during the testimony of other witnesses." Because I respectfully disagree with the rationale in the memorandum affirming the trial court's judgment as to this issue, I concur only in the result it reaches in its memorandum.
At trial, over Benson's continuing objection that S.S.'s statements to medical staff was inadmissible because its receipt violated the Confrontation Clause as set forth in Crawford, and Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), Manfrey, a registered nurse who works in the emergency room of University of Alabama at Birmingham Hospital, testified:
"Q. [The prosecutor]: Do you recall the day that you saw [S.S.] and examined her?
"A. [Manfrey]: Yes, I do.
"Q. Tell us what you did when she came in? First of all, where did you examine her?
"A. She arrived by Birmingham Fire and Rescue, if I remember correctly, and we took her directly to an examination room and I completed the triage process, which is where I interview her to ask her why she's here and get a little history about what happened and what *655 brought her to the emergency department.
"Q. What's the reason for doing that?
"A. So that we know why they're there and what we can do to help them. Why did they come and ask for our services.
"....
"Q. What did she tell you as to why she was there?
"A. That she had been sexually assaulted.
"Q. What did she say was the nature of the assault?
"A. If my memory serves me, she said that someone had entered her apartment around twelve-thirtyish and had repeatedly sexually assaulted her until about, I want to say, three o'clock....
"....
"Q. Now, did you perform what is termed a sexual-assault examination?
"A. Yes, sir."
(R. 58-60.)
"Q. I'm going to ask you a couple of other questions about the examination of [S.S.] Did [S.S.], in your discussion with her, give you any indication as to whether there was any penetration during the activity that lead to her examination at UAB?
"....
"A. She stated in my interview with her that she was assaulted orally, anally, and vaginally.
"....
"Q. You're using the word `assaulted,' do you mean she told you there was contact?
"A. Yes. There was penetration."
(R. 107-08.)
The unpublished memorandum found Manfrey's testimony to be admissible without discussing the Confrontation Clause because, according to the memorandum, it was evidence cumulative to other evidence already received from Mindy Kitchens, the director of the ProAct Team program,[3] with the Jefferson, Blount, Saint Clair Mental Health Authorities, and Officer Steven Parnell, an officer with the Birmingham Police Department, without objection, declaring that a rape had been committed. Kitchens testified, without objection, that on the day of the incident she received a telephone call from a colleague assigned to S.S.'s ProAct Team stating that S.S. "had been attacked and raped." (R. 40.) Officer Parnell testified, without objection, that he "received a rape call" to dispatch to S.S.'s address. (R. 53.) These two statements, according to the unpublished memorandum, render Manfrey's testimony admissible because "[i]t is not error to permit the same facts to be shown again over objection where they have already been proved without objection. Kolmetz v. State, 600 So.2d 389 (Ala.Crim. App.1991). I cannot agree with this rationale. A conviction for first-degree rape, as charged in this case, required proof that the accused: "engage[d] in sexual intercourse with a member of the opposite sex by forcible compulsion." § 13A-6-61(a)(1), Ala.Code 1975. Sexual intercourse is defined as follows: "Such term has its ordinary meaning and occurs upon any penetration, however slight; emission is not required." § 13A-6-60, Ala.Code 1975. I do not believe that Kitchens's and Parnell's characterization of the incident as a rape in any way satisfied the State's burden of establishing a prima facie case *656 of rape. Likewise, I do not view Benson's failure to object to this characterization as a concession that a rape had occurred. The use of the word "rape" by these witnesses was nothing more than their conveying that there had been an accusation of rape. Their description of the incident as a "rape" is not evidence of a rape any more than is the indictment that charges a rape. Therefore, I cannot agree with the analysis in the unpublished memorandum on this issue.
I do agree with the holding in the memorandum that the statements S.S. made to Manfrey regarding the rape were properly admitted into evidence. However, I believe that this case does merit a discussion of the Confrontation Clause and, thus, Crawford and Davis.
Manfrey's testimony was important because "`the victim's testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse.'" Shouldis v. State, 953 So.2d 1275, 1285 (Ala.Crim.App.2006)(quoting Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App. 1996)). Thus, Manfrey's testimony, if admitted into evidence, was evidence of sexual intercourse by forcible compulsion and assured that the case would survive a motion for a judgment of acquittal and be submitted to the jury.[4] Likewise, if the jury believed Manfrey's the testimony, it was sufficient to uphold a conviction.
In Crawford and Davis, the United States Supreme Court explicitly held that, although certain evidence may be admissible because it falls within an exception to the general exclusion of hearsay testimony, that evidence nonetheless must be excluded if it violates the Confrontation Clause of the United States Constitution.
Benson contends that the statements S.S. made to Manfrey were testimonial statements. Therefore, he asserts, because S.S. died from unrelated causes before trial and he did not have the opportunity to cross-examine S.S., allowing Manfrey to testify as to what S.S. told her regarding the rape violated Benson's constitutional right to confront the witness against him.
As the United States Supreme Court explained in Crawford, a basic tenet in the law of evidence has been that "[t]estimonial statements of witnesses absent from trial have been admitted only where the defendant is unavailable, and only where the defendant has had a prior opportunity to cross-examine" that witness. Crawford, 541 U.S. at 59. The Crawford Court went on to recognize the inherent conflict between allowing a testimonial statement to be admitted into evidence as an exception to the hearsay rule when the admission of the statement runs afoul of the Confrontation Clause.
"Where testimonial statements are involved, we do not think the Framers [of the United States Constitution] meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of `reliability.'... Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing the crucible of cross-examination. The Clause thus reflects a judgment, not only about the *657 desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined."
Crawford, 541 U.S. at 61, 124 S.Ct. 1354.
In reconciling the tension between the admissibility of evidence that falls within an exception to the general rule against hearsay and the preclusion of that same evidence's under the Confrontation Clause, the Crawford Court held:
"When nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford flexibility in their development of hearsay lawas does [Ohio v.] Roberts, [448 U.S. 56 (1980)], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."
Crawford, 541 U.S. at 68, 124 S.Ct. 1354.
The Supreme Court set forth the test for Confrontation Clause issues as follows: If the declarant is unavailable to testify at trial and the declarant's statement is "testimonial," then the testimony is not admissible unless the defendant had a prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 59, 124 S.Ct. 1354. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." 541 U.S. at 69, 124 S.Ct. 1354.
The Court left "for another day" an attempt to determine a definition as to what constituted "testimonial," deciding that it encompassed "at a minimum ... prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 69, 124 S.Ct. 1354.
In Davis, supra, the Supreme Court again declined to establish an exhaustive classification of what constitutes "testimonial" or "nontestimonial" statements. Davis, 547 U.S. at 822, 126 S.Ct. at 2273. It did, however, provide a general guide to determining whether a statement is "testimonial" for purposes of a Confrontation Clause analysis.
"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."
Davis, 547 U.S. at 822, 126 S.Ct. at 2273-74.
The Court went on to say that although its holding in Davis involved the product of an "interrogation" by a police emergency 911 dispatcher, Davis should not be read to imply that "statements made in the absence of any interrogation are necessarily nontestimonial. The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation." 547 U.S. at 822 n. 1, 126 S.Ct. at 2274 n. 1.
Whether a defendant's statement to someone who is not a law-enforcement official is testimonial hinges upon whether the individual to whom the defendant spoke is acting as an agent of law enforcement. See Centobie v. State, 861 So.2d 1111, 1121 (Ala.Crim.App.2001). In determining whether Manfrey was acting as an agent of *658 the state, "we must look to the circumstances surrounding the giving" of the statement. See also and Woodson v. State, 392 So.2d 551, 552-53 (Ala.Crim. App.1980).
Here, Manfrey testified that when S.S. first came to the emergency room at the hospital, Manfrey took her directly to an examination room and interviewed her about why she had come to the hospital and "[got] a little history about what had happened." (R. 58.) Manfrey said the purpose of the interview was so that the medical staff would know what to do to help her. (R. 58.) From the record, it appears that no police were present when S.S. was treated. The interview lacked any objective government involvement.
A number of jurisdictions that have considered the issue have determined that statements made during such a medical interview are nontestimonial in nature because the primary purpose of the interview is for the care and treatment of the victim. See, e.g., State v. Vaught, 268 Neb. 316, 682 N.W.2d 284 (2004) (under a "reasonable witness" standard, the statements a sexual-assault victim made to the emergency-room physician were nontestimonial because the victim made the statements and the doctor elicited the statements primarily for the purposes of medical diagnosis and treatment); People v. Vigil, 127 P.3d 916 (Colo.2006) (a child's statements to a doctor following a sexual assault were deemed nontestimonial because "from the perspective of an objective witness in the child's position, it would be reasonable to assume that this examination was only for the purpose of medical diagnosis"); United States v. Peneaux, 432 F.3d 882 (8th Cir. 2005) (statements made to a physician seeking to give medical aid in the form of a medical diagnosis or treatment are presumptively nontestimonial); and State v. Stahl, 111 Ohio St.3d 186, 855 N.E.2d 834 (2006) (statements by a rape victim to emergency room nurse specializing in treating sexual-assault victims were deemed nontestimonial because to a reasonable person, the statements would appear to serve a primarily health-care-related function). Cf. State v. Hooper, 145 Idaho 139, 176 P.3d 911 (2007) (sexual assault nurse examiner and "self-described" forensic interviewer was acting as an agent of police when she interviewed molestation victim referred to her by police and police supervised the victim's visit).
In applying the above-cited authorities, I would find that an objective person in S.S.'s position would understand that Manfrey's interview was conducted primarily for the purpose of providing a medical diagnosis and appropriate treatment and not for the purpose of gathering evidence for trial. Therefore, I would hold that S.S.'s statements to Manfrey were nontestimonial and that, therefore, the statements were properly admitted into evidence.
NOTES
[1] Benson was also indicted and convicted for first-degree rape and first-degree assault (CC-05-1911), and first-degree burglary (CC-05-1912) as to another victim, K.H. Benson was also charged, but found not guilty of first-degree sodomy (CC-05-1914) involving S.S.
[2] "Triage" is the "sorting of patients (as in an emergency room) according to the urgency of their need for care." Merriam Webster's Collegiate Dictionary 1334 (11th ed.2003).
[3] The ProAct Team consists of social workers, community managers, and nurses who form a team to administer home health care to individuals with mental illness.
[4] Later testimony disclosed that Benson's DNA was present on vaginal swabs taken from the victim. However, this alone does not prove sexual intercourse by forcible compulsion.