# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39398

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, June 2013 Term |
| Plaintiff-Respondent, | ) | 2013 Opinion No. 107 |
| v. | ) | Filed: October 30, 2013 |
| DALE CARTER SHACKELFORD, | ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) | SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION DATED AUGUST 16, 2013 IS HEREBY WITHDRAWN |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

The district court's judgment on resentencing is <u>affirmed</u>.

Sara B. Thomas, Idaho State Appellate Public Defender, for appellant. Shannon N. Romero argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. L. LaMont Anderson argued.

_____

J. JONES, Justice.

Dale Carter Shackelford appeals two consecutive fixed life sentences he received on resentencing for two first-degree murder convictions. Shackelford was initially sentenced to death for both murders but the death sentences were subsequently set aside. Shackelford contends that the district court committed error in resentencing him to the consecutive fixed life sentences.

## I.
## FACTUAL AND PROCEDURAL HISTORY

On February 11, 2000, Shackelford was charged with "two counts of first-degree murder, first-degree arson, conspiracy to commit first-degree murder, conspiracy to commit arson, and preparing false evidence." *State v. Shackelford*, 150 Idaho 355, 362, 247 P.3d 582, 589 (2010).

1

"The State alleged that Shackelford conspired with Martha Millar, Bernadette Lasater, Mary Abitz, Sonja Abitz, and, John Abitz" in the commission of his crimes. *Id*. In December of 2000, a jury found Shackelford guilty of: (1) the first-degree murder of his ex-wife, Donna Fontaine; (2) the first-degree murder of Donna's boyfriend, Fred Palahniuk; (3) conspiracy to commit first-degree murder; (4) first-degree arson; (5) conspiracy to commit arson; and (6) preparing false evidence. *Id*. "After weighing the mitigating factors against the individual statutory aggravating factors, the court concluded that the mitigating factors were not sufficiently compelling to render the death penalty unjust, and sentenced Shackelford to death for both first-degree murders." *Id*. "Shackelford was also given prison sentences for the other felony offenses." *Id*. at 362–63, 247 P.3d at 589–90. Shackelford's trial and sentencing were conducted by district judge John Stegner of the second judicial district.

On April 8, 2005, in response to Shackelford's request for post-conviction relief, the district court set aside Shackelford's death sentences based upon its interpretation of *Ring v. Arizona*, 536 U.S. 584 (2002). *Id*. at 363, 247 P.3d at 590. Both parties appealed to this Court. We affirmed Shackelford's first-degree murder convictions, as well as the district court's decision to vacate Shackelford's death sentences and remanded the case for resentencing on the murder convictions. *Id*. at 388, 247 P.3d at 615. Shackelford's resentencing was also set before Judge Stegner. On remand, the State filed a notice that it would not seek the death penalty for the murders of Fontaine and Palahniuk.

On July 12, 2011, Judge Stegner ordered the Department of Correction of the State of Idaho to prepare an updated presentence investigation report (PSI) for Shackelford's resentencing. Shackelford filed an objection to the updated PSI, alleging twelve specific infirmities.

On August 3, 2011, Shackelford moved to disqualify Judge Stegner for cause pursuant to I.C.R. 25(b). Shackelford filed a brief in support of his motion to disqualify Judge Stegner, arguing that his due process right to an impartial judge would be violated if Judge Stegner was not disqualified. A hearing was set for August 26, 2011, to address Shackelford's motion to disqualify Judge Stegner for cause. At the hearing, Judge Stegner denied Shackelford's motion and set his sentencing for September 28, 2011.

At the conclusion of Shackelford's resentencing hearing, Judge Stegner sentenced Shackelford to two fixed life sentences, to be served consecutively, for the murders of Fontaine and Palahniuk. On October 6, 2011, the district court issued its "Judgment of Conviction on

Resentencing–Counts I and II," and formally sentenced Shackelford to two fixed life sentences to run consecutively with each other, and with the sentences previously imposed in Counts III (first degree arson—25 years fixed), IV (conspiracy to commit first-degree murder—fixed life), V (conspiracy to commit first degree arson—25 years fixed), and VI (preparing false evidence—5 years fixed). Shackelford appealed to this Court.

## II.
## ISSUES ON REVIEW

I.  Did the district judge abuse his discretion by denying Shackelford's motion to disqualify him for cause under I.C.R. 25(b)?

II.  Was Shackelford's Sixth Amendment right to confrontation violated during his resentencing?

III.  Did the district court abuse its discretion by considering the written statement of Suzanne Birrell, attached to Shackelford's updated PSI?

## III.
## DISCUSSION

### A.  Standard of Review.

We review a district judge's decision to deny an I.C.R. 25(b)(4) motion to disqualify under an abuse of discretion standard. *State v. Sivak*, 127 Idaho 387, 389, 901 P.2d 494, 496 (1995). This Court "exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Hooper*, 145 Idaho 139, 142, 176 P.3d 911, 914 (2007). Further, "[t]he interpretation of a statute is a question of law over which this Court exercises free review." *State v. Payne*, 146 Idaho 548, 575, 199 P.3d 123, 150 (2008).

### B.  The district judge did not abuse his discretion by denying Shackelford's motion to disqualify him for cause.

On August 3, 2011, prior to his resentencing, Shackelford filed a motion to disqualify Judge Stegner for cause. Shackelford argued that disqualification was warranted because Judge Stegner was biased and prejudiced against him such that he was no longer impartial, violating Shackelford's due process rights. Shackelford contended that Judge Stegner was not impartial because: (1) he reviewed statements of Sonja Abitz that were testimonial hearsay prior to sentencing him in October of 2001; (2) he reviewed, in camera, defense counsel's trial notes; and, (3) he reviewed multiple victim impact statements from Shackelford's original PSI. A hearing addressing Shackelford's for cause disqualification motion was held on August 26, 2011. At the hearing, Shackelford's counsel summarized his for cause disqualification argument as follows:

3

We're simply contending that due to the saturation effect through the Court's exposure to all of the information, documents, and statements that the Court has seen and heard in this case and related cases, that it would appear that bias or prejudice could be the result of that saturation effect.

The district court denied Shackelford's motion. Judge Stegner stated that disqualification was not necessary because he had no actual prejudice against Shackelford that would keep him from carrying out the resentencing in an impartial manner. Further, Judge Stegner stated that if he had any prejudice or bias against Shackelford he would not have vacated his sentence of death for the two murder counts that were the subject of the resentencing.

On appeal, Shackelford argues that the district court abused its discretion in denying his motion to disqualify. Shackelford contends that "the overwhelming volume and nature of Judge Stegner's exposure to impermissible, inflammatory and prejudicial information" made it impossible for him to act fairly and impartially. Specifically, Shackelford argues that Judge Stegner could not impartially apply the appropriate legal standards because he: (1) presided over the criminal trials of Shackelford's co-defendants; (2) heard statements incriminating Shackelford that were made during the proceedings of his co-defendants, but not elicited at Shackelford's trial; (3) presided over Shackelford's initial sentencing and formed an opinion that Shackelford "manipulated, deceived, and coerced others to commit acts they would otherwise not do"; (4) heard numerous statements that constituted testimonial hearsay that were not subject to cross-examination; (5) was privy to confidential trial notes of defense counsel; and (6) was exposed to inadmissible victim impact statements.

The State argues that Shackelford has failed to establish that the district court abused its discretion by denying Shackelford's disqualification motion. The State contends that "mere exposure to additional information from a defendant, co-defendant, or some extra-judicial source, simply does not rise to the level of bias for [the] purposes of I.C.R. 25(b)(4) or due process." In sum, the State argues that there is no basis to find that Judge Stegner was biased or prejudiced toward Shackelford based on his prior knowledge of the case and his previous decision to impose death penalties.

Although there are limited instances where due process requires judicial disqualification, those cases have involved "extreme facts that created an unconstitutional probability of bias." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 887. However, "most disputes over disqualification will be resolved without resort to the Constitution." *Id.* at 890. That is, legislative

4

or judicial codes of conduct will generally be resorted to in resolving judicial disqualification questions. As the *Caperton* Court stated:

> It is axiomatic that "[a] fair trial in a fair tribunal is a basic requirement of due process." [*In re*] *Murchison*, [349 U.S. 133] 136 [1955]. As the Court has recognized, however, "most matters relating to judicial qualification [do] not rise to a constitutional level." *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948). The early and leading case on the subject is *Tumey v. Ohio*, 273 U.S. 510 (1927). There, the Court stated that "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." *Id.* at 523.

*Caperton,* 556 U.S. at 876.

The *Caperton* Court identified three instances "which, as an objective matter, require recusal" under the Due Process Clause. *Id.* at 877. "These are circumstances in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* These circumstances include: (1) instances where the judge has a financial interest in the outcome of the case (*Id.* at 877−79); (2) the situation where a judge charges a defendant with criminal contempt and then proceeds to try him on the charge (*Id.* at 880−81); and (3) cases where a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case. *Id.* at 884–86. Unlike the three abovementioned circumstances, "[p]ersonal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under the Due Process Clause." *Id.* at 877 (quoting *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 820 (1986)).

As Shackelford points out, the due process guarantee to a fair and impartial judge is memorialized in Idaho Criminal Rule 25(b), which permits a party to disqualify a judge for bias or prejudice. Under I.C.R. 25(b), "Any party to an action may disqualify a judge … from presiding in any action" if "[t]hat judge … is biased or prejudiced for or against any party or that party's case in the action." I.C.R. 25(b)(4).

When addressing a motion to disqualify at resentencing brought under I.C.R. 25, "the judge must recognize the case has been judged, that lasting opinions have been formed, and that the judge must determine if the proper legal analysis which the law requires can be performed." *Sivak*, 127 Idaho at 389, 901 P.2d at 496. "A trial judge is not required to erase from his mind all that has gone before, and indeed, it is doubtful that any human being could." *State v. Beam*, 115 Idaho 208, 215, 766 P.2d 678, 685 (1988). "If the judge can make the proper legal analysis, then the motion to disqualify should be denied." *Sivak*, at 389, 901 P.2d 496. This is because "we

presume that a sentencing judge is able to ascertain the relevancy and reliability of a broad range of information which may be presented during the sentencing process, and to disregard that which is irrelevant and unreliable." *Id.* at 390–91, 901 P.2d at 497–98. Furthermore, a trial judge's exposure to evidence, admissible or not, standing alone, does not demonstrate bias at sentencing. *Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir. 1994). Additionally, the "mere fact that a judge presided over the separate trial of a codefendant does not 'constitute reasonable grounds for questioning his impartiality in a subsequent … trial involving a remaining codefendant.'" *Id.* (quoting *U.S. v. Cowden*, 545 F.2d 257, 265–66 (1st Cir. 1976)).

A district judge's decision to deny a for cause motion to disqualify pursuant to I.C.R. 25(b)(4) is reviewed under an abuse of discretion standard. *Sivak*, 127 Idaho at 389, 901 P.2d at 496. In determining whether the district court abused its discretion, the Court asks: "(1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason." *State v. Pratt*, 128 Idaho 207, 211, 912 P.2d 94, 98 (1996).

In this case, Judge Stegner did not abuse his discretion by denying Shackelford's motion to disqualify him for cause. First, Judge Stegner recognized that his decision to grant or deny the I.C.R. 25(b) motion was discretionary. At the motion hearing, Judge Stegner stated:

> Well, I think the standard of disqualification is that the Court should grant the motion if it has actual prejudice against the defendant of such a nature to render it improbable that the Court could carry out the sentencing in a fair and impartial manner. Based on that standard, I'm denying the motion.

This excerpt illustrates that Judge Stegner properly understood the disqualification standard and also that the decision to grant the motion was at his discretion. Second, Judge Stegner acted within the bounds of his discretion. Disqualification is only necessary under I.C.R. 25(b) where the trial judge has "actual bias" against the defendant "of such nature and character as would render it improbable that under the circumstances the party could have a fair and impartial trial." *State v. Pizzuto*, 119 Idaho 742, 776, 810 P.2d 680, 714 (1991), *overruled on other grounds by State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991). In this case, Judge Stegner found that he had no actual bias against Shackelford. At the motion hearing Judge Stegner stated that "the cumulative effect of all the information" he was privy to did not prejudice him against Shackelford. Furthermore, as noted above, exposure to evidence alone will not result in a finding

6

of actual bias. Lastly, Judge Stegner reached his decision to deny the for cause disqualification motion through an exercise of reason. Thus, Judge Stegner did not abuse his discretion by denying Shackelford's motion to disqualify him for cause.

### C. The district court did not violate Shackelford's Sixth Amendment right of confrontation.

The updated PSI ordered by Judge Stegner contained numerous attachments. On appeal, Shackelford takes issue with three attachments to the updated PSI: (1) a written statement made by Madison County, Missouri, prosecuting attorney Scott Killen; (2) a written statement from Shackelford's co-defendant Bernadette Lasater, which includes correspondence between Lasater and Shackelford; and, (3) a written statement from Shackelford's co-defendant Martha Millar.

On August 23, 2011, Shackelford filed twelve objections to the updated PSI. In his objections, Shackelford argued that under *Crawford v. Washington*, 541 U.S. 36 (2004), the statements from Killen, Lasater, and Millar should not be considered by the court because they were out-of-court testimonial statements, barred by the Confrontation Clause.

On appeal, Shackelford raises the same argument and asserts that the district court erred when it considered the statements of Killen, Lasater, and Millar because those statements were testimonial and should not have been considered unless they were subject to confrontation and cross-examination. Specifically, Shackelford argues that the plain language of the Sixth Amendment to the U.S. Constitution, considered in its historical context, affords him the right to confront all witnesses against him, not only during the guilt phase, but also during the sentencing phase of trial. Shackelford contends that the Confrontation Clause extends to sentencing proceedings because, at the time the Sixth Amendment was drafted, the common law understanding of the term "criminal prosecutions" included sentencing. In addition, Shackelford argues that due to our forefathers' historical distrust of oppressive government, including judges, they would not have intended to cut off an accused's constitutional rights at the conclusion of the guilt phase of a trial. Lastly, Shackelford contends that the Confrontation Clause should have barred consideration of the letters because under *Michigan v. Bryant*, 131 S. Ct. 1143 (2011), the statements of Killen, Lasater, and Millar were testimonial statements made for the purpose of establishing past events that would be relevant to sentencing. In sum, Shackelford argues that his two fixed life sentences must be vacated because he was constitutionally entitled to confront and cross-examine the testimonial statements made against him during his sentencing.

The State argues that Shackelford's Confrontation Clause claim fails for three reasons.

First, the State argues that Shackelford's Sixth Amendment claim has no merit because the Confrontation Clause does not apply at the sentencing phase of trial. Second, irrespective of the Confrontation Clause's application at sentencing, the State argues that Shackelford has failed to establish that the district court even considered the statements of Killen, Lasater, and Millar. Third, the State contends that even if this Court finds that the Confrontation Clause applies to the sentencing phase, any error committed by the district court was harmless because "there is no possibility the statements contributed to [Shackelford's] fixed life sentences for first-degree murder."

The Sixth Amendment's Confrontation Clause confers upon the accused "[i]n all criminal prosecutions, the right to be confronted with the witnesses against him." *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713 (2011). The Confrontation Clause applies to state prosecutions via incorporation from the Due Process Clause of the Fourteenth Amendment. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). "[I]n order for testimonial evidence to be admissible … the Sixth Amendment 'demands what the common law required: unavailability and a prior opportunity for cross-examination.'" *Bryant*, 131 S. Ct. at 1153 (quoting *Crawford*, 541 U.S. at 68). However, the right of the accused to confront the witness against him only extends to the guilt phase of trial, while "[a]t sentencing, the defendant's confrontation rights are much more limited." John G. Douglass, *Confronting Death: Sixth Amendment Rights at Capital Sentencing*, 105 COLUM. L. REV. 1967, 1975–976 (2005).

The U.S. Supreme Court has never expressly addressed the applicability of the Confrontation Clause at sentencing. However, its holding in *Williams v. People of State of N.Y.*, 337 U.S. 241 (1949), intimates that the Confrontation Clause does not apply during the sentencing phase of a trial. In *Williams*, a jury found the defendant guilty of murder and recommended life imprisonment but the judge, after considering additional information, imposed a death sentence. *Id.* at 242. Williams argued that the sentencing court's reliance on out-of-court information deprived him of due process in violation of the Fourteenth Amendment. *Id.* at 243. The Court rejected this argument, saying "we do not think the Federal Constitution restricts the view of the sentencing judge to the information received in open court. The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure." *Id.* at 251.

Although *Williams* dealt with due process in the sentencing context, courts have consistently relied on *Williams* for the proposition that the Confrontation Clause does not apply in the sentencing phase. *United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005) ("Both the Supreme Court and this Court, however, have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings."); *Szabo v. Walls*, 313 F.3d 392, 398 (7th Cir. 2002) ("Yet the Supreme Court has held that the Confrontation Clause does not apply to … sentencing. It applies through the finding of guilt, but not to sentencing."); *Bassette v. Thompson*, 915 F.2d 932, 939 (4th Cir. 1990) ("A sentencing court's consideration of reports in a presentence investigation is guided by the holding in *Williams* … in which the court found that the due process clause of the Fourteenth Amendment did not require that a person convicted after a fair trial be confronted with and permitted to cross-examine witnesses as to his prior criminal record considered by the judge in determining what sentence to impose."); *Ortiz v. Stewart*, 149 F.3d 923, 937 (9th Cir. 1998) ("In fact, this Court regularly cites *Williams* for the proposition that a sentencing judge can rely on information provided by witnesses that the defendant has not had the chance to cross-examine, as long as the defendant has had the opportunity to rebut, deny, or explain the information used.").

This Court has previously relied on *Williams* to determine "whether a defendant in a capital case should be afforded the constitutional right to confront and cross-examine live witnesses against him at the sentencing phase of his trial." *See Sivak v. State*, 112 Idaho 197, 215, 731 P.2d 192, 210 (1986). The Court found that no such right existed, and stated:

> We continue … to adhere to the position of the U.S. Supreme Court [in] *Williams* …. The justification for the refusal to completely extend the procedural protections of the sixth amendment to the sentencing phase is based, in part, on the belief that modern penological policies, which favor sentencing based on the maximum amount of information about the defendant, would be thwarted by restrictive procedural and evidentiary rules.

*Id*.

A significant period of time has transpired since this Court's opinion in *Sivak v. State* and, as this Court recognized in *Hooper*, "[t]he U.S. Supreme Court's decision in *Crawford v. Washington* … significantly altered the Supreme Court's Confrontation Clause analysis. A subsequent case, *Davis v. Washington,* … further clarified *Crawford,* but left many issues unresolved." 145 Idaho at 142, 176 P.3d at 914. Notwithstanding *Crawford*, courts continue to

9

hold that during the sentencing phase the right to confront witnesses does not exist. *See United States v. Littlesun*, 444 F.3d 1196, 1199 (9th Cir. 2006) (holding that "*Crawford* speaks to trial testimony, not sentencing" in response to a defendant's argument that *Williams*' longstanding principles have been implicitly overruled by the Supreme Court's decision in *Crawford*).

In this case, Shackelford's Confrontation Clause claim has no merit because under *Williams*, and *Sivak v. State*, Shackelford had no constitutional right to confront and cross-examine any witnesses during the sentencing phase of his criminal prosecution.

### D. The inclusion of Suzanne Birrell's letter as an attachment to the updated PSI was not an abuse of discretion.

Shackelford's updated PSI included a letter from Suzanne Birrell, a close friend of Fontaine. In the letter, Birrell indicated that Fontaine was her best friend. Further, Birrell stated that she was crying as she wrote the letter and "that she misses [Fontaine] so much." Birrell's letter also states that Shackelford "told [her] that he intended to kill [Fontaine] and make it look like an accident." Birrell's letter states:

> [Shackelford] told me that he would kill me and Shanna, [Fontaine's] daughter, if we caused him to be put in prison. I believed he would. After all he made good on his threat to kill [Fontaine] and make it look like an accident. I worry that if Shackelford ever gets out that he will make good on his promise. I worry that if he couldn't find me that he would go after my children or my grandchildren. Regarding the death penalty: I don't care. I do however want the assurance that Dale Shackelford will never, *absolutely never* get out of prison.

Shackelford objected to Birrell's statement:

> The Defendant objects to the Letter from Suzanne Birrell … on the basis of the holding in *State v. Payne*, 146 Idaho 548, 199, P.3d 123 (2008) which limited victim impact statements to members of the deceased's immediate family. Suzanne Birrell … is not a member of the immediate family.

However, despite Shackelford's objections, the Birrell letter remained part of his update PSI.

During Shackelford's sentencing hearing, the State, while making its sentencing recommendation referenced the Birrell letter, stating:

> We look at [Shackelford's] character and the fear that he's created in others. And we talk about the new letters that have been received, Your Honor, which echo what we've talked about in the past. [Birrell], close friend of Donna Fontaine, talks about not only what she lost in the death of her friend Donna … but also relates firsthand "He, Mr. Shackelford, also told me that he would kill me and Shanna, [Fontaine's] daughter, if we caused him to be put in prison. I worry that if Shackelford ever gets out that he will make good on his promise. I worry that if he couldn't find me that he would go after my children or my grandchildren."

10

At Shackelford's resentencing hearing, Judge Stegner specifically inquired as to whether the State wished to offer any victim testimony. In response, Counsel for the State indicated "[t]here are none present, Your Honor. The State would refer the Court back to the original presentence investigation and the original sentencing, where there was that type of information offered to the Court." Counsel for the State did, however, remind the district court that Fontaine's daughter, Shanna Hathman, had drafted a letter that was attached to the updated PSI, but stated that beyond Hathman's letter, "the State has nothing ... specifically on behalf of the victims."

On appeal, Shackelford argues that the district court abused its discretion in considering a victim impact letter from a person who was neither a victim of Shackelford's crimes nor an immediate family member of one of Shackelford's victims. Specifically, Shackelford contends that the written statement of Birrell should have been stricken as an attachment to the updated PSI because this Court's interpretation of I.C. §19-5306 in *State v. Payne* prevents the district court from admitting a victim statement from a person who is not a victim or an immediate family member of a victim.

The State argues that Shackelford's argument is misplaced because Birrell's statement was not admitted as a victim impact statement. Rather, it was used to illustrate Shackelford's dangerousness and Birrell's fear that if Shackelford is ever released from prison, he will kill others that were involved in securing his convictions. Furthermore, the State contends that the district court, during sentencing, has broad discretion to consider a wide range of relevant evidence in order to determine an appropriate sentence. Lastly, the State argues that even if the district court abused its discretion by admitting Birrell's letter, the admission was harmless.

Under I.C. § 19-5306 each victim[1] of a criminal case shall be "[c]onsulted by the presentence investigator during the preparation of the presentence report and have included in that report a statement of the impact which the defendant's criminal conduct had upon the victim." I.C. § 19-5306(1)(h). The provisions of I.C. § 19-5306 "apply equally to the immediate families of homicide victims." I.C. § 19-5306(3). In *State v. Payne*, this Court held that "I.C. § 19-5306 limits victim impact statements to immediate family members." 146 Idaho at 575, 199 P.3d at 150. Further, the Court defined "immediate family members" as "parent, mother-in-law,

---

[1] As used in I.C. § 19-5306, "'victim' is an individual who suffers direct or threatened physical, financial or emotional harm as the result of the commission of a crime or juvenile offense." I.C. § 19-5306(5)(a).

11

father-in-law, husband, wife, sister, brother, brother-in-law, sister-in-law, son-in-law, daughter-in-law, or a son or daughter." *Id*. Thus, the Court held that, in a homicide case, victim impact statements by those who are not "immediate family members" of the victim are inadmissible. *Id*. at 575–76, 199 P.3d at 150–51.

"Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). "Victim impact evidence provides only two types of information: (1) it describes the characteristics of the victim and the emotional impact of the crime on the family; and (2) it sets forth the family members' opinions and characterizations of the crime and the defendant." *State v. Payne*, 146 Idaho at 573, 199 P.3d at 148. The Legislature has also indicated that victim impact testimony is "designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community by the victim's death." *See* I.C. § 19-2515.

In this case, Birrell is a friend, not an "immediate family member" of Fontaine or Palahniuk. Thus, under the terms of I.C. § 19-5306 and this Court's holding in *State v. Payne*, a victim impact statement on behalf of Birrell would be inadmissible. However, there is no indication in the record that the district judge considered the Birrell letter to be a victim impact statement or that he allowed it to remain in the record as such.

The State, at Shackelford's resentencing hearing, did not consider Birrell's letter a victim impact statement or characterize it as one. According to the State, the only victim impact statement in the updated PSI was that of Shanna Hathman, Fontaine's daughter. Although the State's description of the letter is not determinative, it is a consideration. Additionally, the content of Birrell's letter does not reflect the traditional contents of a victim impact statement. The letter tangentially addresses Fontaine's death and the emotional impact on Birrell. However, the main focus of the letter is that Birrell was once threatened by Shackelford, she felt the threat was earnest, and she feared that it would be carried out if Shackelford were to be released. Birrell's letter does not offer any opinions or characterizations about the crime or Shackelford, except that he had previously threatened her.

Shackelford fails to explain why threats to kill others "if [they] caused him to be put in prison" would not be relevant evidence at the sentencing phase of a criminal proceeding. It is certainly proper in the course of the sentencing process for a district court to be advised of and

12

consider the potential danger a defendant may pose to others. After all, "protecting society" is the primary objective of a criminal sentence. *State v. Miller*, 151 Idaho 828, 834, 264 P.3d 935, 941 (2011). The district judge properly considered this evidence, which Shackelford had the opportunity to explain or rebut, and we find no abuse of discretion on the part of the district court.

## IV.
## CONCLUSION

We affirm the district court's judgment of conviction sentencing Shackelford to two consecutive fixed life sentences for the murders of Donna Fontaine and Fred Palahniuk.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.