**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47923**

| | |
|---|---|
| MANUEL JAVIER GOMEZ, | ) |
| | ) **Filed: July 21, 2021** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STATE OF IDAHO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge; Hon. John T. Mitchell, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Manuel Javier Gomez appeals from the district court's summary dismissal of his petition for post-conviction relief. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

During a police sting operation, an officer posed as a mother offering over the Internet her thirteen-year-old daughter for sex. Law enforcement arrested Gomez after he responded to the offer and traveled to a hotel in Idaho to meet the mother and the daughter. Subsequently, Gomez pled guilty to enticing a child over the Internet, Idaho Code § 18-1509A.

The Honorable Lansing L. Haynes presided over Gomez's criminal case. At the sentencing hearing, a certified psychosexual evaluator who evaluated Gomez testified that

1

Gomez posed an average to above-average risk of sex-offense recidivism. The State recommended a ten-year sentence with three years determinate, and Gomez recommended a suspended sentence and probation. The district court imposed a seven-year sentence with two years determinate. Gomez did not appeal this sentence.

In December 2018, Gomez filed a pro se petition for post-conviction relief. Judge Haynes was assigned to Gomez's post-conviction case. After the district court appointed post-conviction counsel for Gomez, he filed an amended petition. Relevant to this appeal, Gomez alleged his defense counsel in the underlying case was ineffective for failing to advise him to begin sex-offender treatment before sentencing and for failing to file a notice of appeal. Gomez also filed his affidavit in support of his amended petition in which he claimed Judge Haynes was racially biased against him. Specifically, Gomez alleged:

> During the time I was in court for arraignment, change of plea and sentence, I had an opportunity to watch the court conduct business with other defendants. During these hearings I perceived the court to look at me--the only Hispanic/Latino male--with distain [sic]. During these hearings I also perceived the court to speak my Hispanic name, Manuel Javier Gomez, with disgust when calling my case. The court's demeanor and facial expressions changed to those of antagonism and loathing when calling and handling my case. The court was otherwise respectful and polite when handling and calling other cases on the docket.

The State responded to Gomez's amended petition and moved for summary disposition of his claims. In support of its motion, the State filed the affidavit of Gomez's trial counsel.

In response to the State's motion, Gomez filed an amended affidavit in which he included allegations that his trial counsel's deficient performance prejudiced him. Gomez also included additional allegations of Judge Haynes's purported bias against Gomez, stating Judge Haynes looked at Gomez with "distain [sic], disgust, hard eyes, and disrespect" and mispronounced his name with an "incorrect inflection" and "a condescending manner." Additionally, Gomez filed the affidavits of his mother and sister in response to the State's summary disposition motion.

Regarding Judge Haynes's purported conduct, Gomez's mother attested that she was present at both the hearing to postpone sentencing and at the sentencing hearing and that during these proceedings Judge Haynes "mispronounce[ed] Gomez's name as 'Manwell'"; made "slight grins and smirks" when addressing Gomez's case; "already had his mind made up on sentencing" without considering "the psychosexual evaluation or polygraph"; "was fidgety, leaning forward on his hands, leaning back in his chair, rarely looking" at the psychosexual evaluator during his testimony; and "seemed to be disgusted" when Gomez spoke. Gomez's

mother also attested that "I did not see the Judge review or read the letters of support I provided." Similarly, Gomez's sister attested that during the sentencing hearing, Judge Haynes "flipped through all our letters of character with no regard and then quickly set them aside, basically ignoring them"; "had a look of carelessness and disregard of anything positive of [sic] anyone had to say about [Gomez]"; "appeared to not even be listening"; gave "short and smerky [sic]" answers and comments; and appeared to be "daydreaming" during the psychosexual evaluator's testimony.

In August 2019, the district court held a hearing on the State's summary disposition motion. Because Gomez had alleged a claim of racial bias against Judge Haynes, he stated his intention to hear the State's motion, to rule on Gomez's claims which were unrelated to the racial bias claim, and to voluntarily recuse himself to allow a different judge to address Gomez's racial bias claim and to rule on any claims which survived the State's motion. Gomez indicated agreement with and did not object to Judge Haynes proceeding in this manner.

In September 2019, the district court held a status conference. During that conference, the court indicated its intention to dismiss Gomez's post-conviction claims with the exception of his racial bias claim and his ineffective assistance of counsel claim for failure to file a notice of appeal. Regarding this latter claim, the court noted that a factual question of whether Gomez actually requested his trial counsel to file a notice of appeal precluded summary dismissal of the claim and required an evidentiary hearing. Thereafter, in October 2019, Judge Haynes issued a written decision consistent with his comments during the status conference and voluntarily disqualified himself from the case. At that time, another district judge, the Honorable John T. Mitchell, was assigned to Gomez's post-conviction case.

In January 2020, the district court issued a written decision dismissing Gomez's racial bias claim. Then, in March 2020, it held an evidentiary hearing on Gomez's ineffective assistance of counsel claim for failure to file a notice of appeal and, likewise, dismissed that claim. Gomez timely appeals the dismissal by Judge Mitchell of his racial bias claim and also the dismissal by Judge Haynes of his ineffective assistance of counsel claim for failure to advise him to begin sex-offender treatment before sentencing.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such

inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### III.

### ANALYSIS

#### A.     Ineffective Assistance of Counsel

Gomez argues the district court[1] erred by summarily dismissing his ineffective assistance of counsel claim for failure to advise him to begin sex-offender treatment before sentencing. A

---

[1]     For purposes of analyzing Gomez's ineffective assistance of counsel claim, the reference to the district court is to Judge Haynes who ruled on this claim.

claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Gomez argues there was a factual question about whether his trial counsel actually advised him to begin sex-offender treatment before sentencing, which precludes summary dismissal. Gomez notes his trial counsel does not affirmatively attest that he actually advised Gomez to seek treatment before sentencing. Rather, Gomez's trial counsel only attests that his "standard practice [is] to advise clients that seeking treatment well before any sentencing date demonstrates remorse and a willingness to change" and that he has "no reason to believe [he] deviated from this practice" when advising Gomez. In contrast, Gomez contends his trial counsel did not advise him to seek treatment before sentencing.

Even assuming this inconsistency creates a factual question of deficient performance, Gomez fails to establish prejudice. Gomez argues he was prejudiced because engaging in treatment before sentencing "would have shown [his] amenability to probation (with a withheld judgment) and possibly a reduced risk to society." Implicit in this argument is the assertion that the district court would have imposed a lesser sentence if Gomez had begun treatment before sentencing. This argument, however, ignores the court's ruling. In addressing Gomez's failure to show prejudice, the court stated that "the sentencing court knew [Gomez] was amenable to treatment, but evidence of involvement in a treatment program would not have changed the

6

seriousness of the offense, nor addressed the sentencing goals of deterrence to others or punishment." In other words, the court concluded that, even if Gomez had begun sex-offender treatment by the time of sentencing that fact would not have impacted the court's decision or resulted in a lesser sentence. Accordingly, we conclude that Gomez has not shown a reasonable probability that, but for his trial counsel's alleged deficient performance, the outcome of his case would have been any different and that the district court did not err by summarily dismissing his ineffective assistance of counsel claim.

## B.    Racial Bias

Gomez also challenges the district court's[2] summary dismissal of his claim that Judge Haynes was racially biased.[3] In ruling on this claim, the district court considered the affidavits of Gomez, his mother, and his sister; the transcripts of the hearings for Gomez's arraignment, his change of plea, his sentencing, and his I.C.R. 35 motion; and also the digital recordings of a postponed sentencing hearing and of the actual sentencing hearing.[4] The district court found that Judge Haynes was "at all times courteous." It rejected Gomez's assertion that Judge Haynes's pronunciation of his given name, Manuel, indicated racial bias; noted Gomez never corrected

---

[2]    For purposes of analyzing Gomez's racial bias claim, the reference to the district court is to Judge Mitchell who ruled on this claim.

[3]    In its written decision, the district court never expressly states it is summarily dismissing Gomez's racial bias claim. The district court, however, does recount a discussion during a prior status conference about how the court should proceed to resolve Gomez's racial bias claim:

> Counsel for Gomez stated an evidentiary hearing should be held on the failure to file a notice of appeal, but agreed that the issue of racial bias could be decided by this Court based on the present record. Counsel for the State agreed, and the Court announced that the issue of racial bias would be taken under advisement at that time.

The statement suggests Gomez may have waived an evidentiary hearing on his racial bias claim. There is, however, no transcript or other record of the status conference in the appellate record. Because both parties analyze the dismissal as a summary dismissal, we likewise analyze the claim under the summary dismissal standard of review.

[4]    Neither of these recordings is in the appellate record. The appellant is responsible to provide a sufficient record to substantiate his claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.* Rather, we will presume the missing portions of the record support the district court's ruling. *Rencher/Sundown LLC v. Pearson*, 165 Idaho 877, 881, 454 P.3d 519, 523 (2019).

any mispronunciation of his name; and concluded Judge Haynes's pronunciation was a "legitimate pronunciation" and "of no significance." Further, the district court rejected the affiants' conclusions that Judge Haynes's purported facial expressions and other conduct reflected racial bias. Based on these findings, the district court concluded "Gomez failed to present any admissible evidence" of racial bias.

On appeal, Gomez argues he established a prima facie case that Judge Haynes "had an actual bias against him" based on his affidavits and those of his mother and sister. He contends the "concrete observation" of Judge Haynes's "demeanor, facial expressions, and voice" and the "severity of his sentence" all "indicate" actual bias. We disagree.

As Gomez acknowledges, a claim for post-conviction relief based on a judge's racial bias must assert a constitutional violation, *see* I.C. § 19-4901(a)(1) (providing post-conviction claim alleged unconstitutional sentence), and both the United States Supreme Court and the Idaho Supreme Court have recognized that most matters relating to judicial disqualification do not rise to a constitutional level. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009); *see also State v. Shackelford*, 155 Idaho 454, 458, 314 P.3d 136, 140 (2013) (citing *Caperton* with approval). Only when a judge's "probability of actual bias . . . is too high to be constitutionally tolerable" is recusal required. *Caperton*, 556 U.S. at 877; *Shackelford*, 155 Idaho at 459, 314 P.3d at 141. Examples of such bias include if a judge has a financial interest in a case's outcome or charges a defendant with criminal contempt and then tries the defendant on that charge or if a person, who had a significant and disproportionate influence in placing the judge on a case, has a personal stake in that case. *Caperton*, 556 U.S. at 877-87; *Shackelford*, 155 Idaho at 459, 314 P.3d at 141.

Gomez contends that "this case represents an exception" to the rule requiring a high probability of actual bias for a constitutional violation. We, however, decline to create such an exception and conclude Gomez's allegations do not establish a probability of actual bias that is constitutionally intolerable. In fact, Gomez's allegations of purported mispronunciations, facial expressions, tone, and body language are inadequate to establish *any* bias against Gomez. Even assuming--for argument's sake--that such conduct occurred and was not captured on the record, Gomez's and his family's conclusions that the conduct equated to racial bias against Gomez is purely speculative. "To justify an evidentiary hearing, the applicant must tender a factual showing based on evidence that would be admissible at the hearing." *Baldwin v. State*, 145

8

Idaho 148, 155, 177 P.3d 362, 369 (2008).  As the State correctly notes, the district court was not required to accept speculative allegations as proof of racial animus.[5]  Furthermore, Gomez's personal expectation of a lesser sentence based on his counsel's statements about Gomez's possible sentence is not evidence of racial bias, and he fails to cite any authority to the contrary.  Accordingly, the district court did not err by summarily dismissing Gomez's racial bias claim.

## IV.

## CONCLUSION

The district court did not err by summarily dismissing either Gomez's claim for ineffective assistance of counsel or his claim that Judge Haynes was racially biased against Gomez.  Accordingly, we affirm the judgment summarily dismissing Gomez's petition for post-conviction relief.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

---

[5]    The State does not assert that Gomez was required to raise his claim of racial bias during the underlying criminal case.  Noteworthy, however, is that Idaho Criminal Rule 25(b) memorializes the due process guarantee to a fair and impartial judge. *State v. Shackelford*, 155 Idaho 454, 459, 314 P.3d 136, 141 (2013).  It provides in relevant part that "any party to an action may disqualify a judge from presiding in any action [if] the judge is biased or prejudiced for or against any party or that party's case."  I.C.R. 25(b)(4).  Despite this rule and despite Gomez's allegations that Judge Haynes purportedly exhibited racial bias as early as the arraignment hearing, Gomez never moved to disqualify Judge Haynes in either Gomez's criminal case or in his post-conviction case.  Gomez's failure to timely seek appropriate relief under I.C.R. 25(b)(4) indicates his racial bias allegations are specious.